# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GLOBAL VOICE GROUP SA,

Trident Chambers,
P.O. Box 1388, Victoria, Mahé
Republic of the Seychelles

        *Plaintiff*,

   v.

THE REPUBLIC OF GUINEA,

Immeuble de la Poste
Almamya
PO Box 3000
c/o Mr Mory Doumbouya
Judicial Agent of the State
Cité chemin de fer
Immeuble Mam ou, 1st Floor
Kaloum, Conakry
Republic of Guinea

        *Defendant*.

Civil Action No. _____

**COMPLAINT**

Plaintiff Global Voice Group SA ("GVG"), by its attorneys, Draper & Draper LLC, as

and for its Complaint against Defendant The Republic of Guinea ("Guinea"), alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff GVG is a company incorporated under the law of the Seychelles that

provides monitoring and supervising consulting services to the finance and telecom sectors and

to governments and State entities.

2.     On May 22, 2009, Plaintiff GVG contracted with Guinea and The Postal and

Telecommunications Regulatory Authority of Guinea ("PTRA") to provide and install control

tools to enable Guinea to view and tax all international telecommunications traffic.  Declaration

of Marianne Kecsmar ("Kecsmar Decl.") ¶ 9, **Exhibit C** ("Partnership Agreement").[1]  The

PTRA is supervised by Guinea's Ministry of Telecommunications and New Information

Technologies.  Kecsmar Decl. ¶ 9, **Exhibit B**, p. 2.  GVG provided the contracted for services,

which Guinea and the PTRA accepted.  Guinea and the PTRA then breached the Partnership

Agreement by refusing to pay GVG for the services GVG had provided and by wrongfully

terminating the agreement.  Kecsmar Decl. ¶ 11; **Exhibit A**, ¶¶ 238, 294, 380 d.

3.      The Partnership Agreement contains an arbitration clause governed by the United

Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, dated

June 10, 1958 (the "New York Convention").  Kecsmar Decl. ¶ 10; **Ex. C**, Art. 17 ("Arbitration

Agreement").  Pursuant to the Arbitration Agreement, the International Chamber of Commerce's

International Court of Arbitration ("ICC") in Paris, France, duly-constituted an arbitral tribunal

("Arbitration Tribunal") in proceedings captioned *Global Voice Group SA (Seychelles) v. The*

*Postal and Telecommunications Regulatory Authority of Guinea (Guinea) and The Republic of*

*Guinea (Guinea)*, in ICC Case No. 22467/DDA (the "Arbitration").  Kecsmar Decl., ¶ 7.[2]

4.      Guinea and the PTRA were represented by sophisticated counsel and fully

participated in the Arbitration.  *Id.* at ¶¶ 13-14.  The hearing was conducted in Paris, France, the

legal seat of the Arbitration.  *Id.* at ¶¶ 7, 14.

---

[1]      References to **Exhibits A** (the Final Award), **B** (the Paris Court of Appeal Judgment), and **C** (the Partnership Agreement) in this Complaint are to the English translations of the same. Each of the Exhibits referenced in this Complaint comprise the English translation, followed by the French language original, followed by a certification as to the accuracy of the English translation (Certificate of Accuracy).

[2]      GVG has elected not to seek enforcement of the Final Award against PTRA.  Kecsmar Decl. ¶ 7.

5.      On July 18, 2019, the Arbitration Tribunal issued a final award, which found Guinea and the PTRA jointly and severally liable to GVG under the Partnership Agreement, awarding GVG more than $20 million in damages.  *Id.* at ¶¶ 7, 15-16, 19, 26*,* **Ex. A** ("Final Award") ¶ 380 f. and h., **Ex. B** at ¶¶ 133-134, p. 19 (4-, 5-).

6.      On September 5, 2020, Guinea and the PTRA sought to annul the Final Award before the Court of Appeal of Paris ("Paris Court of Appeal").  Kecsmar Decl. ¶ 20.  On September 6, 2020, Guinea and the PTRA filed a corrected action challenging the Final Award. *Id.*  The two actions were merged by the Paris Court of Appeal into a single action on September 15, 2020, under action number 19/17531.  *Id.*  On September 7, 2021, the Paris Court of Appeal rejected all of Guinea's and PTRA's alleged bases for annulment, recognized the Final Award, awarded GVG its legal costs, and dismissed the case.  *Id*. at ¶¶ 21-23, **Ex. B** (the "Paris Court of Appeal Judgment") ¶¶ 35-36, 53-54, 64, 105, 115, 132-134 and p. 19.

7.      Neither Guinea nor PTRA have paid the amounts awarded to GVG.  Kecsmar Decl. ¶ 25.  Therefore, GVG seeks to recognize and enforce the Final Award as provided for by the New York Convention and the Federal Arbitration Act; and seeks to recognize and enforce the Paris Court of Appeal Judgment pursuant to the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361, *et seq*. ("D.C. Recognition Act").

8.      Although Guinea is a foreign state, it is not immune from jurisdiction in this action to confirm the Final Award, and to recognize the Paris Court of Appeal Judgment based on the Final Award.  Guinea entered into a binding agreement to arbitrate the parties' disputes that is governed by the New York Convention, which means that two separate exceptions to

Guinea's sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") apply: the waiver exception and the arbitration exception. 28 U.S.C. § 1605(a)(1), (6).

9.  For the reasons set forth in this Complaint, both the Final Award and the Paris Court of Appeal Judgment should be recognized and enforced as a judgment of this Court.

## THE PARTIES

10.  Plaintiff GVG is a corporation organized under the laws of the Seychelles. Kecsmar Decl. ¶ 5.  Until 2021, GVG's registered office was located at 1st Floor, #5 Dekk House, De Zippora Street, PO Box 456, Providential Estate, Mahé, Republic of the Seychelles. *Id.*, *see* **Ex. A** p. 2.  GVG's current registered address is: Trident Chambers, P.O. Box 1388, Victoria, Mahé, Republic of Seychelles.  Kecsmar Decl. at ¶ 5.

11.  Defendant Guinea is a foreign state within the meaning of the FSIA.  28 U.S.C. § 1603(a).  Guinea filed the annulment action challenging the Final Award (*déclaration de recours en annulation*) as Republic of Guinea, Ministry of Posts, Telecommunications and Digital Economy, with registered address at at Immeuble de la Poste, Almamya PO Box 3000, c/o Mr Mory Doumbouya, Judicial Agent of the State, with registered address at Cité chemin de fer, Immeuble Mam or, 1st Floor, Kaloum, Conakry, Republic of Guinea and c/o the Minister of Posts, Telecommunications and Digital Economy of the Republic of Guinea.  Kecsmar Decl. ¶ 6, **Ex. B**, p. 1.

## JURISDICTION AND VENUE

12.  Plaintiff GVG's claims arise under Chapter 2 of the Federal Arbitration Act, codified at 9 U.S.C. §§ 201, *et seq.*, which applies the New York Convention to award-recognition actions brought in United States courts, and under the D.C. Recognition Act, which

governs the enforcement of money judgments rendered by non-U.S. courts in the District of Columbia.

13.     Both the Seychelles, the country of Plaintiff's incorporation, and Guinea, are signatories to the New York Convention.  Kecsmar Decl. ¶ 27.  Plaintiff's right to enforce the Final Award arise under the New York Convention.

14.     The Court has original subject matter jurisdiction over this action pursuant to 9 U.S.C. § 203, which provides that United States District Courts have original subject matter jurisdiction over a proceeding governed by the New York Convention.

15.     The Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that United States District Courts have original jurisdiction over any nonjury civil action against a foreign state (as defined in 28 U.S.C. § 1603(a)) with respect to which the foreign state is not entitled to immunity under either 28 U.S.C. §§ 1605-1607 or any applicable international agreement.  28 U.S.C. § 1330(a).

16.     Guinea is not immune from the jurisdiction of this Court because the FSIA denies immunity to a foreign state (1) that has waived its immunity (28 U.S.C. § 1605(a)(1)), and (2) in an action to enforce an international commercial arbitration award.  28 U.S.C. § 1605(a)(6).

17.     Venue in this Court is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).

18.     This Court has personal jurisdiction over Guinea pursuant to 28 U.S.C. § 1330(b), because Plaintiff GVG will effect service on Guinea pursuant to 28 U.S.C. § 1608.

## THE FINAL AWARD

19.     On May 22, 2009, GVG, Guinea and PTRA (a legal person governed by public law that is under the supervision of the Ministry of Telecommunications and New Information

Technologies of Guinea, **Ex. B** p.2) signed the Partnership Agreement.  The purpose of the

Partnership Agreement was to provide and install control tools (an IMS-STP Supervision

System) for Guinea, thereby providing Guinea with the ability to view and tax all international

telecommunications traffic for each carrier in real time.  Kecsmar Decl. ¶ 9, **Ex. C**.  The

Partnership Agreement was extended and amended on July 6, 2009 ("First Amendment"), and

was further amended in an Addendum dated June 10, 2012 (the "Addendum").   Kecsmar Decl. ¶

9, **Exhibits D** (First Amendment with English translation) and **E** (Addendum, with English

translation).

> 20.      Under Article 17 of the Partnership Agreement the parties agreed to arbitrate all

disputes:

> In the absence of an amicable agreement between the Parties within
> a period of six (6) months following the date on which a dispute
> arises, any dispute of any kind, including the Annexes and any
> amendments thereto, which may arise between them, shall be
> subject to the exclusive jurisdiction of the Arbitration Rules of the
> International Chamber of Commerce in Paris by one or more
> arbitrators appointed in accordance with these Rules.

Kecsmar Decl. ¶ 10, **Ex. C**, Art. 17 (Arbitration Agreement)

> 21.      Disputes under the Partnership Agreement are, therefore, subject to binding

arbitration in accordance with the Arbitration Rules of the ICC.  *See* Kecsmar Decl. ¶ 10.

> 22.      A dispute arose between the parties when Guinea and PTRA breached the

Partnership Agreement by refusing to pay GVG for the services it had provided and by

wrongfully terminating the agreement.  Kecsmar Decl. ¶ 11, **Ex. A** ¶¶ 238, 294, 380 d.

> 23.      On December 8, 2016, GVG submitted a Request for Arbitration against Guinea

and PTRA to the Secretariat of the ICC.  Kecsmar Decl. ¶ 12, **Ex. A**, ¶ 49.  On December 28,

2016, the Request for Arbitration was transmitted by the ICC to Guinea and PTRA.  Kecsmar

Decl. ¶ 12, **Ex. A** ¶ 50.  On July 6, 2017, the Arbitration Tribunal was duly constituted by the

ICC.  Kecsmar Decl. ¶ 12, **Ex. A** ¶ 54.

24.     Guinea and PTRA both participated in the Arbitration and were represented by

the law firm Hughes Hubbard & Reed.  Kecsmar Decl. ¶ 13, **Ex. A** ¶¶ 58, 74.  Guinea and PTRA

submitted numerous briefs (**Ex. A** ¶¶ 82, 84, 85, 86), witness affidavits (*id.* ¶ 88), and an expert

report (*id.* ¶ 89).  Kecsmar Decl. ¶ 13.

25.     A final evidentiary hearing was held on January 28 to 30, 2019 in Paris, France,

the legal seat of the Arbitration.  Kecsmar Decl. ¶¶ 7, 14, 27.  All parties participated, presented

evidence, and had opportunities to cross examine the other's witnesses.  *Id.* at ¶ 14, **Ex. A** ¶ 91.

26.     On July 18, 2019, the Arbitration Tribunal issued, in Paris, France, the Final

Award in the Arbitration.  Kecsmar Decl. ¶ 15, **Ex. A**.

27.     The Arbitration Tribunal found that the Arbitration Agreement is valid, that both

Guinea and PTRA are parties to the Partnership Agreement (and the Arbitration Agreement), and

that, therefore, the Arbitration was validly constituted against both Guinea and PTRA.  Kecsmar

Decl. ¶ 16, **Ex. A** ¶ 380 a.-b.

28.     The Arbitration Tribunal further found that GVG performed its contractual

obligations in full under the Partnership Agreement (**Ex. A** ¶ 380 d.), and that Guinea and PTRA

improperly terminated the Partnership Agreement (*id.*).  Kecsmar Decl. ¶ 17.

29.     The Arbitration Tribunal found that Guinea and PTRA must pay to GVG the sum

of USD 6,824,441.28 corresponding to outstanding invoices issued by GVG under the

Partnership Agreement from June 1, 2014 to May 31,2015; and USD 14,973,258.19

corresponding to amounts due to GVG from Guinea and PTRA from June 1, 2015 to May 22,

2017.  Kecsmar Decl. ¶ 18, **Ex. A** ¶ 358.

30.     The Final Award ordered that Guinea and PTRA must pay to GVG: (i) USD

21,797,699.47 with respect to the aforesaid amounts due under the Partnership Agreement, as

amended, bearing an interest rate of 2% per year running from December 8, 2016; and (ii)

GVG's legal costs, expenses and arbitration fees of USD 417,565.49 and EUR 93,532.51,

bearing an interest rate of 2% per year running from the date of the Award (July 18, 2019).

Kecsmar Decl. ¶ 19, **Ex. A** ¶ 380 f. and h.

## THE PARIS COURT OF APPEAL JUDGMENT

31.     On September 5, 2020, Guinea and PTRA initiated an appeal for annulment of the

Final Award with the Paris Court of Appeal.  Kecsmar Decl. ¶ 20, **Ex. B** ¶ 14.  On September 6,

2020, Guinea and PTRA filed a corrected action challenging the Final Award.  Kecsmar Decl. ¶

20.  The two actions were merged by the Paris Court of Appeal into a single action on September

15, 2020, under action number 19/17531.  *Id.*  In pleadings submitted on December 15, 2020,

Guinea and PTRA asked the Paris Court of Appeal to annul the Final Award and order GVG to

pay the full costs of the annulment action.  *Id.*, **Ex. B** ¶ 20.  On March 15, 2021, GVG asked the

Paris Court of Appeal to reject Guinea's and PTRA's annulment claim, and order Guinea and

PTRA to pay GVG's costs in the annulment action.  Kecsmar Decl. ¶ 20, **Ex. B** ¶ 21.

32.     Guinea and PTRA alleged before the Paris Court of Appeal, among other things,

that the Arbitration Tribunal: (1) lacked jurisdiction (**Ex. B** ¶¶ 22-24, 37-38), (2) was improperly

constituted by the ICC (*id.* at ¶ 55), (3) violated French public policy principles by (a)

improperly considering allegations of corruption (*id.* at ¶¶ 65-66) and (b) depriving Guinea and

PTRA of due process (*id.* at ¶ 106), and (4) had not complied with its mandate by failing to

provide reasons for portions of its award and ignoring certain of Guinea's and PTRA's

arguments (*id.* at ¶ 116).  Kecsmar Decl. ¶ 21.  The Paris Court of Appeal considered each of

these allegations, and rejected them.  *Id.*, **Ex. B** ¶¶ 35-36, 53-54, 64, 105, 115, 132 and p.19.

33.    On September 7, 2021, the Paris Court of Appeal issued the Paris Court of Appeal

Judgment denying Guinea's and PTRA's annulment request, and awarding GVG EUR 200,000

in legal costs and expenses.  Kecsmar Decl. ¶ 22, **Ex. B** p. 19.  The Paris Court of Appeal

Judgment against Guinea and PTRA is final and conclusive.  Kecsmar Decl. ¶ 24.  Guinea's

legal representative was officially notified of the Paris Court of Appeal Judgment by the Paris

Court of Appeal electronically on September 7, 2021.  Kecsmar Decl. ¶ 22.  The Judgment was

served by GVG on Guinea's legal representative on September 28, 2021("*signification à*

*avocat*").  *Id.* at ¶ 23.  A certified copy was delivered to the Public Prosecutor on October 8,

2021 and was delivered to the French Ministry of Foreign Affairs on October 19, 2021 to be

served through the diplomatic channel on Guinea.  *Id*.

34.    Guinea and PTRA are jointly and severally liable to pay the Final Award and the

EUR 200,000 costs award to Plaintiff GVG.  *Id.* at 26, **Ex. A** at ¶ 380 f. and h., **Ex. B** at ¶¶ 133-

134, p. 19 (4-, 5-).  Neither Guinea nor PTRA has paid to GVG any portion of the Final Award,

and they have expressed no intention to do so.  Kecsmar Decl. ¶ 25.  Similarly, neither Guinea

nor PTRA has paid to GVG the costs award issued by the Paris Court of Appeal.  *Id*.

### COUNT I – CONFIRMATION AND ENFORCEMENT OF THE FINAL AWARD

35.    Plaintiff GVG incorporates each allegation in paragraphs 1 through 34 above as if

set forth fully herein.

36.    The Arbitration Tribunal concluded in the Final Award that a valid agreement to

arbitrate existed between GVG and Guinea.  Kecsmar Decl. ¶ 16, **Ex. A** ¶ 380 a.-b.

37.     The Final Award was made in France.  Kecsmar Decl. ¶ 15, **Ex. A**.  France is a contracting state to the New York Convention, and is a contracting state other than the one in which GVG now seeks recognition.  Kecsmar Decl. ¶ 27.

38.     Guinea and the United States are also each contracting states to the New York Convention.  *Id.*  Under the New York Convention a district court "shall confirm" an arbitration award made in another signatory state "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.

39.     There is no reason for this Court not to recognize the Final Award based on any of the grounds set forth in Article V of the New York Convention.  The Final Award (**Ex. A**) establishes this.  So does the Paris Court of Appeal Judgment, which rejected all of Guinea's and PTRA's allegations that the Final Award falls within an exception to Article V of the New York Convention.  **Ex. B.**

40.     The Final Award, dated July 18, 2019, was issued less than three years from the date of this Complaint.  Therefore, this Complaint is timely.  9 U.S.C. § 207.

41.     This Court should therefore confirm the Final Award under the New York Convention and 9 U.S.C. § 207.

## COUNT II – ENFORCEMENT OF THE PARIS COURT OF APPEAL JUDGMENT

42.     Plaintiff GVG incorporates each allegation in paragraphs 1 through 41 above as if set forth fully herein.

43.     Under the laws of France, the Paris Court of Appeal Judgment recognized the Final Award and incorporated it into the French legal system.  Kecsmar Decl. ¶ 23, *see also* **Ex. B** p. 19.

44.     Guinea, which initiated and participated fully in the proceedings before the Paris Court of Appeal, was duly notified of the Paris Court of Appeal Judgment.  Kecsmar Decl. ¶¶ 22-23.

45.     The Paris Court of Appeal Judgment is final and conclusive and enforceable.  *Id.* at ¶ 24.  Among other things, it ordered that Guinea pay GVG EUR 200,000.   *Id.* at ¶ 22.

46.     No French court has annulled, vacated or otherwise disturbed the Paris Court of Appeal Judgment.  *Id.* at ¶ 24.

47.     Guinea has not paid GVG any of the amounts owed under the Paris Court of Appeal Judgment.  *Id.* at ¶ 25.

48.     France is a "foreign countr[y]" under the D.C. Recognition Act.  *See* D.C. Code § 15-362.

49.     The Paris Court of Appeal Judgment is a "foreign-country judgment" under the D.C. Recognition Act.  *Id.*

50.     The Paris Court of Appeal Judgment grants "recovery of a sum of money."  *Id.* § 15-363(a)(1).

51.     The Paris Court of Appeal Judgment is final, conclusive, and enforceable "[u]nder the law of the foreign country where [it was] rendered," which is France.  *Id.* § 15-363(a)(2)(A)–(C).

52.     The Paris Court of Appeal Judgment concerns the enforcement of an arbitral award resolving a commercial dispute, not a fine or other penalty or a judgment for taxes, divorce, support, maintenance, or other domestic relations matter.  *Id.* § 15-363(b).

53.     The Paris Court of Appeal Judgment satisfies all the grounds for recognition

under the D.C. Recognition Act, and therefore it should be recognized as a judgment of this

Court. *Id.* § 15-364(a).

## **DEMAND FOR RELIEF**

WHEREFORE, GVG requests that this Court enter an Order:

(a)     Recognizing and enforcing the Final Award against Guinea pursuant to the New

York Convention;

(b)     Recognizing and enforcing the Paris Court of Appeal Judgment pursuant to the

D.C. Recognition Act;

(c)     Entering judgment in favor of Plaintiff GVG and against Defendant Guinea based

on the Final Award and the Paris Court of Appeal Judgment in the following

amounts:

1.      USD 6,824,441.28, plus simple interest at a rate of 2% per annum from

June 1, 2014 to May 31, 2015, for the outstanding invoices as set forth in

the Final Award;

2.      USD 14,973,258.19 plus simple interest at a rate of 2% per annum for the

period June 1, 2015 to May 22, 2017, for the amounts due in this time

period as set forth in the Final Award;

3.      The following sums, bearing simple interest at a rate of 2% per annum

from July 18, 2019, the date of the Final Award, until full payment by

Guinea, as set forth in the Final Award:

a.      USD 90,500.00 for the ICC fees;

b.      EUR 85,887.08 for fees and disbursements;

      c.      EUR 2,967.20 for logistics costs;

      d.      EUR 4,678.23 for travel expenses;

      e.      USD 326,965.49 for GVG's legal fees;

4.      EUR 200,000 for Plaintiff GVG's legal fees and costs in the action before the Paris Court of Appeal, as ordered in the Paris Court of Appeal Judgment;

(d)      Awarding post-judgment interest on the above amounts from the date this Court enters judgment;

(e)      Awarding Plaintiff its costs, including legal fees, for the present action; and

(f)      Awarding such other and further relief as the Court deems appropriate.

Dated: July 15, 2022

Respectfully submitted,

By: */s/ Matthew E. Draper*
Matthew E. Draper (DC Bar No. 1045930)
DRAPER & DRAPER LLC
200 Park Avenue, Suite 1700
New York, NY 10166
T: (347) 442-7788
Matthew.Draper@draperllc.com

*Attorneys for Global Voice Group SA*