IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLOBAL VOICE GROUP SA,

        *Plaintiff*,

v.

REPUBLIC OF GUINEA,

        *Defendant*.

Civil Action No.: 1:22-cv-02100-JMC

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT PURSUANT TO RULE 55(c) AND MOTION TO DISMISS PURSUANT TO RULES 12(b)(1), 12(b)(2), AND 12(b)(5)**

January 13, 2022

HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Tel: (202) 721-4751
Fax: (202) 721-4646
*Appearing Specially as Counsel for Defendant Republic of Guinea*

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................1

II. THE COURT HAS GOOD CAUSE TO SET ASIDE ENTRY OF DEFAULT.............5

III. THE COURT LACKS SUBJECT MATTER JURISDICTION ON THE GROUNDS OF SOVEREIGN IMMUNITY...................................................................................6

IV. ALTERNATIVELY, THE COURT LACKS PERSONAL JURISDICTION ................8

V. CONCLUSION...........................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acree v. Republic of Iraq*, 658 F. Supp. 2d 124 (D.D.C. 2009)..........................................................5

*Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) .........................................8

*Azadeh v. Gov't of the Islamic Rep. of Iran*, 318 F. Supp. 3d 90 (D.D.C. 2018).............................9

*Barot v. Embassy of the Rep. of Zambia*, 785 F.3d 26 (D.C. Cir. 2015) .........................................8

*Barot v. Embassy of the Rep. of Zambia*, 11 F. Supp. 3d 33 (D.D.C. 2014) ...................................9

*BG Grp. plc v. Republic of Arg,* 572 U.S. 25, 41 (2014) .................................................................7

*Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005) .............................................................9

*Enka Insaat Ve Sanayi A.S. v. Gabonese Republic*, 406 F. Supp. 3d 84 (D.D.C. 2019) ..............................................................................................................................................5

*GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805 (2012).....................................................................8

*Hardy Exploration & Production (India), Inc. v. Government of India*, 219 F.Supp.3d 50 ........................................................................................................9, 10, 11

*Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126 (D.D.C. 2010) .........................................5

*Estate of Hirshfeld v. Islamic Republic of Iran*, 235 F. Supp. 3d 45 (D.D.C. 2017) .......................9

*International Road Federation v. Embassy of the Democratic Republic of the Congo*, 131 F.Supp.2d 248 (D.D.C. 2001) ...............................................................................12

*Jackson v. Beech*, 636 F.2d 831, 205 U.S. App. D.C. 84 (D.C. Cir. 1980) .....................................6

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir.2004) .........................................................................................3

*Mann v. Castiel*, 681 F.3d 368 (D.C. Cir. 2012)...........................................................................10

*Marlowe v. Argentine Naval Com'n*, 604 F. Supp. 703 (D.D.C. 1985) .......................................12

*Orange Middle East & Africa v. Republic of Equatorial Guinea,* 2016 WL 2894857 (May 18, 2016)................................................................................................11

*Owens v. Republic of Sudan*, 374 F. Supp. 2d 1 (D.D.C. 2005) .....................................................5

*Pharm. Research and Manufacturers of Am. v. U.S. Dept. of Health and Human Services*, 43 F. Supp. 3d 28 (D.D.C. 2014) ................................................................ 2

*Practical Concepts, Inc. v. Republic of Bolivia*, 811 F. 2d 1543 (D.C. Cir. 1987) ......................... 5

*Przewozman v. Islamic Republic of Iran*, Civil Action No. 19-2601 (RDM), 2022 U.S. Dist. LEXIS 169153 (D.D.C. Sep. 19, 2022) ................................................................ 9

*Republic of Kazakhstan v. Stati*, 325 F.R.D. 507 (D.D.C. 2018) .................................................. 6

*TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007) .................................... 3

*Transaero v. La Fuerza Aerea Boliviana*, F.3d 148, 154 (D.C. Cir. 1994) ................................... 9

*Von Pezold v. Rep. of Zimbabwe*, 2022 U.S. Dist. Lexis 159797 (D.D.C. Sept. 6, 2022) ............................................................................................................................... 8

**Constitutional Provisions**

First Amendment ............................................................................................................................ 2

**Statutes and Rules**

28 U.S.C. § 1330(a) ....................................................................................................................... 6

28 U.S.C. § 1330(b) ....................................................................................................................... 8

28 U.S.C. § 1604 ............................................................................................................................ 6

28 U.S.C. § 1605(a) ................................................................................................................... 6, 7

28 U.S.C. § 1608(a) ............................................................................................................. *passim*

Fed. R. Civ. P. 4(c) ........................................................................................................................ 3

Fed. R. Civ. P. 4(j)(1) .................................................................................................................... 8

Fed. R. Civ. P. 12(b)(2) ................................................................................................................. 8

Fed. R. Civ. P. 12(b)(5) ................................................................................................................. 8

Fed. R. Civ. P. 55(c) .............................................................................................................. 4, 5, 6

Fed. R. Civ. P. 60(b) ...................................................................................................................... 5

The Foreign Sovereign Immunities Act of 1976 (FSIA) ..................................................... *passim*

**Treatises and Periodical Materials**

10A Fed. Prac. & Proc. Civ. 3d § 2696 ..........................................................................................5

I.      INTRODUCTION

The Republic of Guinea ("Guinea") appears specially to move this court to set aside the Clerk's entry of default (Dkt. 14) and to dismiss the complaint (Dkt. 1) filed by plaintiff Global Voice Group SA ("GVG"), or in the alternative, to order GVG to re-serve the complaint. On July 18, 2022, GVG initiated this action to confirm an arbitral award issued on July 18, 2019 (Dkt. 4-1 through 4-4) by an arbitral tribunal under the auspices of the International Chamber of Commerce ("ICC") International Court of Arbitration. The ICC Award concerned the commercial relationship between GVG and the Postal Telecommunications and Regulatory Authority ("PTRA") of Guinea, which plaintiff chose not to name in its complaint. *See* Dkt. 4 n. 2 ("GVG has elected in these proceedings not to seek enforcement of the Final Award against the other named respondent in the Arbitration, [PTRA].")

GVG observed in its complaint that, "the Paris Court of Appeal Judgment recognized the [ICC] Award and incorporated it into the French legal system." *See* Dkt. 4 at para. 23. On August 8, 2022, Guinea lodged an appeal of the Paris Court of Appeal Judgment with the French Cour de Cassation. Guinea's appeal was assigned appeal number A2220121 and remains pending. We have been advised by Guinea's Cassation counsel that the Cour de Cassation fixed a deadline of February 19, 2023 for the submission of Guinea's written arguments in support of its appeal. We further understand that GVG will have an opportunity file its own written response, and that the judgment in these proceedings will likely be rendered at the end of 2024.[1]

---

[1] This is consistent with the guidance provided on the French Cour de Cassation website: "The processing time for an appeal by the Court of Cassation depends on the complexity of the dispute. On average, it takes 15 months from the time of the appeal in a civil case for the High Court to render its decision." https://www.courdecassation.fr/mes-demarches/comment-faire-un-pourvoi-en-cassation/comment-faire-un-pourvoi-en-matiere-civile#:~:text=Le%20d%C3%A9lai%20de%20traitement%20d%27un%20pourvoi%20par%20la%20Cour,sa%20d%C3%A9cision%20en%20mati%C3%A8re%20civile (translation by counsel). The Court may consider this information at this stage in the proceedings. *See Pharm. Research*

The commercial relationship between GVG and the PTRA was governed by the Partnership Agreement, which defines the two parties to that agreement as PTRA and GVG. *See* Dkt. 4-6 at 1. Although the Partnership Agreement was signed by the Guinean Minister of Telecommunications and New Information Technologies, Colonel Mathurin Bangoura, the Partnership Agreement did not include Guinea in its definition of the parties to the agreement. Moreover, Guinea was not named a party to either the First Amendment or the Addendum to the Partnership Agreement. *See* Dkt. 4-7, 4-8. The allegation contained in GVG's complaint that "Guinea entered into a binding agreement to arbitrate the parties' disputes" (Dkt. 1 at para. 8) is thus contradicted by the definition of "parties" under the Partnership Agreement and subsequent modifications to that agreement. The allegations in the Plaintiff's complaint concerning Guinea's alleged waiver of sovereign immunity are predicated on Guinea having been a party to the Partnership Agreement, including that agreement's arbitration provision. *See* Dkt. 1 at para. 16. Guinea's alleged waiver of sovereign immunity also appears to be predicated on the arbitral tribunal's holding that Guinea, by its conduct in the negotiation of the Partnership Agreement, was a party to the Partnership Agreement and thus properly a party to the arbitration. *See* Dkt. 4-1 at paras. 167–69. Guinea disputed in the arbitration that it was a Party to the Partnership Agreement and that it did not agree to arbitration with GVG. The enforceability of the arbitration agreement against Guinea has been and remains the subject of appellate proceedings pending in France. The arbitration was seated in Paris, France. *See* Dkt. 4-1 at para. 53(b). Accordingly, French courts have primary jurisdiction to review the arbitration award. *See*

---

*and Manufacturers of Am. v. U.S. Dept. of Health and Human Services*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("A court may also take judicial notice at any stage of the proceeding. Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citations omitted).

*TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) ("The Convention provides a carefully crafted framework for the enforcement of international arbitral awards. Under the Convention, '[o]nly a court in a country with primary jurisdiction over an arbitral award may annul that award.'") (citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir.2004)); *id*. at 937 (country in which the award is made is the primary jurisdiction).

Following the electronic issuance of summons on July 21, 2022 (Dkt. 5), the Court informed Plaintiff through a minute order on October 3, 2022 of their responsibility "for serving Defendant with process, consisting of the summons and a copy of the complaint" under Rule 4(c) of the Federal Rules of Civil Procedure, and reminded Plaintiff that "the 90-day deadline for service will expire after October 18, 2022." During those 90-days, Plaintiff did not attempt service pursuant to the "special arrangement for service" between the plaintiff and Guinea as the Foreign Sovereign Immunities Act ("FSIA") required it to do. 28 U.S.C. §1608(a)(1). Article 11 of the Partnership Agreement provided that, "All communications sent pursuant to or in connection with this Agreement must be delivered" to the Director General of the PTRA (and to no other Guinean governmental recipient); however, GVG did not mail a service packet to the Director General of the PTRA. Instead of serving the complaint pursuant to Article 11 of the Partnership Agreement, following the Court's minute order, GVG requested on October 14, 2022 that the Clerk of the Court mail service packets on five Guinean ministers pursuant to 28 U.S.C. §1608(a)(3) other than the PTRA official authorized by the Partnership Agreement to accept service pursuant. *See* Dkt. 8, 8-1. On November 8, 2022, Plaintiff filed a return of service (Dkt. 12), and moved for entry of default on December 21, 2022 (Dkt. 13). The Clerk entered default on December 29, 2022. *See* Dkt. 14.

The Court should set aside that entry of default for "good cause" under Fed. R. Civ. P. 55(c). The Plaintiff chose not to serve process on the PTRA official designated to receive service under the Partnership Agreement. If GVG is correct that Guinea is a party to the Partnership Agreement—a proposition that Guinea disputes but which is a necessary predicate to GVG's claim that Guinea waived its immunity from suit—then GVG was obligated to treat Guinea as a party to the Partnership Agreement for all purposes, including especially for service of process under the complaint. Indeed, the FSIA, specifically 28 U.S.C. § 1608(a)(1), obligated GVG to serve Guinea in accordance with the "special arrangement" on service found in Article 11 of the Partnership Agreement. GVG chose not to make service on Guinea in accordance with Article 11 of the Partnership Agreement. GVG cannot have it both ways. It cannot treat Guinea as a party to the Partnership Agreement for some purposes (such as the arbitration provision) but not for others (such as the service provision of Article 11).

Either this Court lacks subject matter jurisdiction because Guinea was not a party to the Partnership Agreement, was not properly a party to the arbitration, and retains its sovereign immunity; or in the alternative, this Court lacks personal jurisdiction because GVG did not serve Guinea in accordance with 28 U.S.C. § 1608(a)(1), and impermissibly skipped ahead to serve process under 28 U.S.C. § 1608(a)(3), a method which would only have been available if Guinea were not a party to the Partnership Agreement.

For the reasons set forth below, Guinea respectfully requests that the Court find good cause to set aside the clerk's entry of default; and dismiss the complaint for lack of subject matter jurisdiction, or in the alternative, order GVG to serve process pursuant to 28 U.S.C. § 1608(a)(1).

## II.   THE COURT HAS GOOD CAUSE TO SET ASIDE ENTRY OF DEFAULT

There is good cause for the Court to set aside the clerk's entry of default (Dkt. 14), and the Court should do so.  Rule 55(c) of the Federal Rules of Civil Procedure provides that:  "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  In order to demonstrate good cause, the party moving to set aside default must "provide an explanation for the default or [ ] give reasons why vacation of the default entry would serve the interests of justice."  *Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126, 129 (D.D.C. 2010) (citing 10A Fed. Prac. & Proc. Civ. 3d § 2696).

The United States Court of Appeals for the D.C. Circuit ("the D.C. Circuit") has indicated that there is "a presumption against default judgments in cases involving foreign sovereigns."  *Enka Insaat Ve Sanayi A.S. v. Gabonese Republic*, 406 F. Supp. 3d 84, 87 (D.D.C. 2019).  The reason for this presumption is that "it is in the interest of the United States' foreign policy to encourage foreign states to appear before our courts in cases brought under the FSIA."  *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F. 2d 1543, 1551–52 (D.C. Cir. 1987).  That interest is heightened when a foreign state "has appeared in the case and expressed a desire to contest the claims[,]" as Guinea intends to do, resulting in "a strong presumption against the entry of a default judgment."  *Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 9 (D.D.C. 2005).

As a result, "[w]hen a defendant foreign state has appeared and asserts legal defenses, albeit [even] after a default judgment has been entered, it is important that these defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments."  *Id.* at 1552; *see also Acree v. Republic of Iraq*, 658 F. Supp. 2d 124 (D.D.C. 2009) ("Default judgments are generally disfavored by courts perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing.")

(internal quotation marks and citation omitted). Repeatedly, this Court has expressed a preference that a case proceed on the merits with parties participating in their own defense, even after default has been entered. *See Jackson v. Beech*, 636 F.2d 831, 836, 205 U.S. App. D.C. 84 (D.C. Cir. 1980); *Republic of Kazakhstan v. Stati*, 325 F.R.D. 507, 509 (D.D.C. 2018).

Recognizing the D.C. Circuit's well-established presumption against default judgments in cases involving foreign sovereigns, this Court should set aside the entry of default under Rule 55(c) of the Federal Rules of Civil Procedure. This Court has "good cause," for doing so in this case for the reasons explained below.

### III.   THE COURT LACKS SUBJECT MATTER JURISDICTION ON THE GROUNDS OF SOVEREIGN IMMUNITY

This Court lacks subject matter jurisdiction because Guinea retains its sovereign immunity. The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" except in specified circumstances. 28 U.S.C. § 1604. If an exception to the main rule of sovereign immunity applies, then the FSIA alone confers subject matter jurisdiction on the district courts. *See* 28 U.S.C. § 1330(a) ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.").

GVG's complaint alleges in a conclusory manner that "Guinea is not immune from the jurisdiction of this Court because the FSIA denies immunity to a foreign state (1) that has waived its immunity, and (2) in an action to enforce an international commercial arbitration award." Dkt. 1 at para. 16 (citing 28 U.S.C. § 1605(a)(1); 28 U.S.C. § 1605(a)(6)). GVG's allegation is that Guinea waived sovereign immunity as a result of an "agreement to arbitrate" that resulted in

the ICC Award (Dkt. 4-1 through 4-4) it seeks to enforce. 28 U.S.C. § 1605(a)(6). The "agreement to arbitrate" that GVG alleges triggers the exception to Guinea's sovereign immunity under 28 U.S.C. § 1605(a)(6) is found in Article 17 of the Partnership Agreement (Dkt. 4-6 at p. 11), which GVG alleges is "an arbitration clause governed by the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards" (the "New York Convention"). Dkt. 1 at para. 3.

GVG alleges that it "contracted with Guinea and The [PTRA] to provide and install control tools to enable Guinea to view and tax all international telecommunications traffic." Dkt. 1 at para. 2. However, the Partnership Agreement itself makes clear that Guinea was not a party by defining the term "parties" to include only the Plaintiff and the PTRA.[2] The Agreement itself does not name Guinea as a party. At no point, including in the subsequent and ongoing challenge to the ICC Award in French courts (*see* Dkt. 4-5), has Guinea entered into an agreement to arbitrate with GVG that would constitute an implicit or explicit waiver of its sovereign immunity under 28 U.S.C. § 1605(a)(6) or 28 U.S.C. § 1605(a)(1). Those sections of the FSIA, on which GVG based its assertion of subject matter jurisdiction (*see* Dkt. 1 at para. 16) would only apply if Guinea had been a party to the Partnership Agreement and thus properly a party to the arbitration. Guinea thus retains its sovereign immunity from suit before this Court and this Court lacks subject matter jurisdiction.

---

[2] In the ICC Award, the Tribunal erroneously found that Guinea was a party to the Partnership Agreement and thus a proper party to the arbitration. Guinea strenuously contests this jurisdictional finding, and federal courts are not bound by an arbitral tribunal's determination of its jurisdiction. *See BG Grp. plc v. Republic of Arg.,* 572 U.S. 25, 41 (2014) (providing for jurisdictional review of arbitrators' jurisdictional determinations)

7

### IV.        ALTERNATIVELY, THE COURT LACKS PERSONAL JURISDICTION

GVG's case – and this Court's subject matter jurisdiction – depends on the correctness of the allegations in its complaint that Guinea was a party to the Partnership Agreement and that it agreed to arbitrate with GVG. Although GVG alleges that Guinea was a party to the Partnership Agreement, GVG did not treat Guinea as a party to the Partnership Agreement for purposes of service of process. By disregarding the service provisions in Article 11 of the Partnership Agreement, GVG failed to effectuate service of process in the manner required by the FSIA, which obligated GVG to attempt service pursuant to any "special arrangement" before attempting to serve process by mail. As a result, the Court lacks personal jurisdiction over Guinea. Accordingly, if the Court does not dismiss for lack of subject matter jurisdiction, then the Court should find that it lacks personal jurisdiction under Rule 12(b)(5) and Rule 12(b)(2) of the Federal Rules of Civil Procedure and either dismiss the case or require plaintiff to re-serve the complaint. Because Guinea has not yet properly been served in accordance with the FSIA, the Court lacks personal jurisdiction.

"[U]nder the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction." *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 811 (2012) (citations omitted). Indeed, courts have recognized that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). "Before a court can exercise jurisdiction over a foreign state, 'a plaintiff must effect service in compliance with the [FSIA].'" *Von Pezold v. Rep. of Zimbabwe*, 2022 U.S. Dist. Lexis 159797, * 3 (D.D.C. Sept. 6, 2022) (quoting *Barot v. Embassy of the Rep. of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015)); *see also* 28 U.S.C. §1330(b) (providing for personal jurisdiction "where service has been made under [§]1608"); Fed. R. Civ. P. 4(j)(1) ("A foreign state … must be served in accordance with … §1608.").

The FSIA lists four methods of service. *See* 28 U.S.C. § 1608(a)(1)–(4). This list is hierarchical; a plaintiff may attempt to serve via a subsequent entry in the list only "if service cannot be made under" the previous method. 28 U.S.C. § 1608(a)(3), (4); *see also Hardy Exploration & Production (India), Inc. v. Government of India*, 219 F.Supp.3d 50, 57 (D.D.C. 2016 ("Plaintiffs must attempt service by each method, in order, before proceeding to the next available method."). Caselaw in this circuit has affirmed that plaintiffs cannot "skip" any of the successive service methods set forth in 28 U.S.C. § 1608(a). *See Przewozman v. Islamic Republic of Iran*, Civil Action No. 19-2601 (RDM), 2022 U.S. Dist. LEXIS 169153, at *21 (D.D.C. Sep. 19, 2022) ("Courts already require plaintiffs who entirely skip one of § 1608(a)'s service methods to go back and try again.") (citing *Azadeh v. Gov't of the Islamic Rep. of Iran*, 318 F. Supp. 3d 90, 100 (D.D.C. 2018); *Estate of Hirshfeld v. Islamic Republic of Iran*, 235 F. Supp. 3d 45, 47-48 (D.D.C. 2017)). Courts "hold that strict adherence to the terms of 1608(a) is required." *Transaero v. La Fuerza Aerea Boliviana*, F.3d 148, 154 (D.C. Cir. 1994) (voiding default judgment for lack of service); *see also Barot v. Embassy of the Republic of the Zambia*, 11 F. Supp. 3d 33, 35–36 (D.D.C. 2014) ("this Court is bound to follow the Circuit Court's directive to require strict adherence to [§]1608(a)'s plain language when evaluating defendant's challenge to plaintiff's service."); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2005) ("The requirements of § 1608(a) are applied strictly.").

The first method of service is "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." 28 U.S.C. § 1608(a)(1). GVG was obligated to serve in accordance with this method if a special arrangement between it and Guinea existed. GVG bears the burden of

demonstrating it effected service properly, and it has not met that burden. *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (collecting cases).

In order to prove its case for subject-matter jurisdiction, GVG asserts that it "contracted with Guinea and the [PTRA]" and that Guinea signed the Partnership Agreement. *See* Dkt. 1 at para. 2 ("Plaintiff GVG contracted with Guinea and [PTRA] to provide and install control tools to enable Guinea to view and tax all international telecommunications traffic."); Dkt. 4 at para. 9 ("GVG, Guinea and PTRA (a legal person governed by public law that is under the supervision of the Ministry of Telecommunications and New Information Technologies of Guinea, Ex. B p.2) signed the Partnership Agreement"); Dkt. 1 at paras. 8 ("Guinea entered into a binding agreement to arbitrate the parties' disputes"), 17 (citing arbitration clause in Article 17 of the Partnership Agreement). Guinea has consistently disputed that it was a party to the Partnership Agreement and maintains that it never agreed to arbitrate disputes with GVG under the Partnership Agreement.

However, even assuming Plaintiff were correct, then it would necessarily follow that Article 11 of the Partnership Agreement would constitute a "special agreement" between GVG and Guinea under 28 U.S.C. § 1608(a)(1), and that GVG would be obligated to serve Guinea under that method. Assuming *arguendo* that Guinea is a party to the Partnership Agreement, Article 11 of the Partnership Agreement would constitute such a special agreement under the well-established case law of the D.C. Circuit. Article 11 requires service on the Director General of the PTRA of "[a]ll communications sent pursuant to or in connection with this Agreement[.]" Dkt. 4-5 at pp. 8–9.

In *Hardy Exploration & Production (India), Inc. v. Government of India*, the court summarized what constitutes a "special agreement" under 1608(a)(1): "courts in this District

10

have found a special arrangement for service in broad, unrestricted contract language . . . But courts have refused to find a special arrangement for service where the relevant provision is restricted to communications specifically contemplated by the contract." 219 F.Supp.3d 50, 64 (D.D.C. 2016). It provided as an example of a "broad" and "unrestricted" provision as one that applied to all communications "relating to" or "related to" the contract, as opposed to one that applied only to communications "under" the contract. *Id.* at 61, 65.³ The contractual language in Article 11 of the Partnership Agreement that is at issue here, "[a]ll communications sent pursuant to or **in connection with** [the Partnership Agreement]" (Dkt. 4-5 at pp. 8–9) (emphasis added), is "broad" and "unrestricted," and as a result constitutes a "special arrangement" within the meaning of 28 U.S.C. § 1608(a)(1).

The court in *Orange Middle East & Africa v. Republic of Equatorial Guinea* affirmed the distinction made in *Hardy*: "When a notice provision is all encompassing, it usually qualifies as a 'special arrangement for service' under § 1608(a)(1). But when a notice provision is confined to the contract or agreement at issue, it does not qualify as a special arrangement for service. Judges on this Court have regularly distinguished communications provisions limited to a contract/agreement and more general provisions. Courts in other districts have adopted the same distinction." 2016 WL 2894857 at *3-4 (May 18, 2016). Other courts in the D.C. Circuit have adjudicated broad contractual provisions on notice similar to the notification provision in Article

---

³ The court found there was no "special agreement" in *Hardy*, because the contractual provision referred to "communications given, submitted, or made **hereunder** by any Party to another." 219 F.Supp.3d 50, at 61. It explicitly contrasted that provision to another provision that said: "all communications . . . **relating to**" the contract. "The plain and ordinary meaning of the two phrases is not the same—the word 'relating' implies **a broader, more flexible connection** to the [contract]." *Id*. (emphasis added). The Court then explained that argument would have succeeded if the contract read, "all legal process related to this contract must be delivered . . ." or "'all communications and notices **related to** the contract must be delivered' in a specified manner." *Id*. at 65 (emphasis added).

11 of the Partnership Agreement that is at issue here as "special arrangements" within the meaning of 28 U.S.C. § 1608(a)(1).  *See International Road Federation v. Embassy of the Democratic Republic of the Congo*, 131 F.Supp.2d 248, 251 (D.D.C. 2001) (finding a special arrangement in a provision providing that "[a]ll notices, demands, or requests between Sublessor and Sublessee shall be delivered in person, by certified mail, return receipt requested, or by registered mail[.]"); *Marlowe v. Argentine Naval Com'n*, 604 F. Supp. 703, 708 (D.D.C. 1985) (finding that "[s]ervice of process certainly falls under the contractual language of 'notices, requests, demands or other communications to or upon the respective parties.'").

It is undisputed that GVG has not served Guinea in accordance with Article 11 of the Partnership Agreement pursuant to 28 U.S.C. § 1608(a)(1).  GVG reports that service of its complaint was made "pursuant to 28 U.S.C. § 1608(a)(3)" on "five different addresses belonging to the Judicial Agent for the Republic of Guinea, the Ministry of Foreign Affairs for the Republic of Guinea, and the Minister of Post, Telecommunications and the Digital Economy for the Republic of Guinea." Dkt. 13-1 at para. 4.  But the plain text of § 1608(a)(3) provides for service **only** "if service cannot be made under paragraphs (1) or (2)[.]" 28 U.S.C. § 1608(a)(3).  GVG's disregard of the available service method under 28 U.S.C. § 1608(a)(1) violated the FSIA.  As a result of Plaintiff's improper service, the court lacks personal jurisdiction and GVG must re-serve the complaint in accordance with the FSIA.[4]

---

[4] If the Court allows GVG to re-serve, Guinea will further develop its 12(b)(1) immunity objection in subsequent submissions, including how under the law of the D.C. Circuit, the arbitral tribunal's assertion of jurisdiction over Guinea is not entitled to any deference but rather subject to de novo review.  Guinea reserves the right to present additional defenses, including challenges to the formation and validity of both the Partnership Agreement as a whole and particularly the arbitration agreement.

## V. CONCLUSION

The Court should dismiss this case for lack of subject matter jurisdiction. The Partnership Agreement defines the "parties" to it as including only GVG and PTRA. Because Guinea was not a party to that agreement (or any of its amendments), then it was not properly a party to the arbitration. This Court is entitled to rely on GVG's deliberate decision not to serve Guinea pursuant to the service provisions of the Partnership Agreement as conduct confirming what the Partnership Agreement makes clear, namely, that Guinea was not a party to that agreement. Guinea therefore retains its immunity from suit because none of the limited exceptions to sovereign immunity set forth in the FSIA apply, and the Court should dismiss this case.

Alternatively, the Court should find that it lacks personal jurisdiction over Guinea and either dismiss the complaint or require GVG to re-serve the complaint in accordance with 1608(a)(1). Guinea expressly reserves all rights to contest the jurisdiction of this Court.

Dated: January 13, 2023

Respectfully submitted,

/s/ James H. Boykin
James H. Boykin
Alexander S. Bedrosyan
Carter A. Rosekrans
Hughes Hubbard & Reed
1775 I Street, N.W.
Washington, D.C. 20006-2401
Tel: (202) 721-4751
Fax: (202) 721-4646
james.boykin@hugheshubbard.com
*Appearing Specially as Counsel for Defendant Republic of Guinea*