**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GLOBAL VOICE GROUP SA,<br><br>　　　　　　　*Plaintiff*,<br><br>　　v.<br><br>REPUBLIC OF GUINEA,<br><br>　　　　　　　*Defendant*. | Civil Action No.: 1:22-cv-02100-JMC |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF
DEFAULT PURSUANT TO RULE 55(c) AND MOTION TO DISMISS PURSUANT TO
RULES 12(b)(1), 12(b)(2), AND 12(b)(5)**

February 3, 2023

HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C.  20006-2401
Tel:  (202) 721-4751
Fax:  (202) 721-4646
*Appearing Specially as Counsel for
Defendant Republic of Guinea*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    THE COURT LACKS SUBJECT MATTER JURISDICTION ON THE GROUNDS
       OF SOVEREIGN IMMUNITY ..................................................................................6

   A.  Plaintiff Has Not Presented *Prima Facie* Evidence of an Arbitration Agreement with
       Guinea ........................................................................................................................7

   B.  Plaintiff's Reliance on the Commercial Arbitration Tribunal's Award Does Not
       Discharge Plaintiff's Burden of Production...............................................................11

III.   ALTERNATIVELY, THE COURT LACKS PERSONAL JURISDICTION
       BECAUSE OF DEFICIENT SERVICE.......................................................................16

IV.    CONCLUSION............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986) ............................................................................................................12

*Barot v. Embassy of the Rep. of Zambia*, 785 F.3d 26 (D.C. Cir. 2015) ......................17

*Barot v. Embassy of the Republic of the Zambia*, 11 F. Supp. 3d 33 (D.D.C. 2014) ..................17

*BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233 (D.D.C. 2015)..................8

*Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d 166 (D.D.C. 2018) .................21

*Chevron v. Republic of Ecuador*, 795 F. 3d 200 (D.C. Cir. 2015) .............................7, 8

*Chiejina v. Federal Republic of Nigeria*, 2022 WL 3646377 (D.D.C. Aug. 24, 2022) ..........................................................................................................7, 8, 9

*Contec Corporation v. Remote Solution, Co.*, 398 F.3d 205 (2d Cir. 2005) ...........................4, 13

*Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005)..........................................17

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)............................4, 5, 14

*Flaherty v. Ross*, 373 F. Supp. 3d 97 (D.D.C. 2019)......................................................4

*Gater Assets Ltd. v. Moldovagaz*,  2 F.4th 42, 50 (2d Cir. 2021) ...........................10, 11

*Hardy Exploration & Production (India), Inc. v. Government of India*, 219 F.Supp.3d 50 (D.D.C. 2016)............................................................................17, 22

*Henderson v. Shinseki*, 562 U.S. 428 (2011) .................................................................4

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994)...........................4

*LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021).................3, 8

*Mann v. Castiel*, 681 F.3d 368 (D.C. Cir. 2012)...........................................................18

*Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350 (Fed.Cir.2004)......................4, 12, 13

*Ex parte N.Y.*, 256 U.S. 490 (1921) .............................................................................18

*In re Paragon Offshore PLC*, 588 B.R. 735 (D. Del. 2018)........................................12

*Przewozman v. Islamic Republic of Iran*, Civil Action No. 19-2601 (RDM), 2022 U.S. Dist. LEXIS 169153 (D.D.C. Sep. 19, 2022) ....................................................17

*Stabil LLC et al v. The Russian Federation* (D.C. Cir. Case No. 22-cv-00983-TNM) ..........................................................................................................17, 23

*Stati v. Republic of Kazakhstan*, 199 F.Supp.3d 179 (D.D.C. 2016) .............................8

*Transaero v. La Fuerza Aerea Boliviana*, F.3d 148, 154 (D.C. Cir. 1994) ...................17

*Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) .......................23

*Von Pezold v. Rep. of Zimbabwe*, 2022 U.S. Dist. Lexis 159797 (D.D.C. Sept. 6, 2022) ....................................................................................................................16

## Statutes and Rules

28 U.S.C. § 1330(b) ...........................................................................................17

28 U.S.C. § 1605 ........................................................................................1, 4, 10

28 U.S.C. § 1608 ......................................................................................... *passim*

28 U.S.C. § 1608(a)(1) .......................................................................................21

Fed. R. Civ. P. 4(j)(1) .........................................................................................17

Fed. R. Civ. P 12(b)(1), 12(b)(2), and 12(b)(5) .......................................................1, 11

Fed. R. Civ. P 12(h)(3) ...................................................................................16, 24

Foreign Sovereign Immunities Act.................................................................. *passim*

## Treatises and Periodical Materials

15 James Wm. Moore et al., *Moore's Federal Practice* ¶ 100.20[2].............................16

## Other Authorities

Cong. Rsch. Serv. RL 41379, *Samantar v. Yousef: The Foreign Sovereign Immunities Act (FSIA) and Foreign Officials*, 2 (2013) .........................................23

*ICC Rules* .........................................................................................................13

## I.    INTRODUCTION

The Republic of Guinea ("Guinea") appeared specially in this action to move to set aside entry of default and to dismiss the Complaint under Rules 12(b)(1), 12(b)(2), and 12(b)(5) of the Federal Rules of Civil Procedure.  Plaintiff Global Voice Group SA ("GVG" or the "Plaintiff") opposes setting aside the Clerk's entry of default because "Guinea failed to participate in these proceedings for close to five months—from the date the Complaint was filed (July 18, 2022) until after the Clerk of the Court entered Default on December 29, 2022."  Dkt. 17 at p. 2. Plaintiff waited three years after procuring its arbitral award ("ICC Award") to file its Complaint (Dkt. 1), yet finds a lack of good cause to set aside entry of default against a sovereign state because "Guinea offers no explanation for this delay[.]"  *Id*.  Guinea's opening memorandum provided that explanation, namely that this Court lacks both subject matter and personal jurisdiction.

The Foreign Sovereign Immunities Act ("FSIA") provides the sole basis for a federal court's subject matter jurisdiction over foreign sovereigns, their agencies and instrumentalities. Under the FSIA, a foreign state is presumptively immune and an action may proceed only to the extent that any of the FSIA's limited exceptions to immunity apply.  Those exceptions are listed in 28 U.S.C. § 1605.  Plaintiff failed to make a *prima facie* showing that any of those exceptions to sovereign immunity apply here.  Specifically, GVG's Complaint, which purports to rely on the "arbitration exception," fails to establish a *prima facie* case for the existence of an arbitration agreement to which Guinea was a party.  Plaintiff's Complaint also fails to allege facts to establish a *prima facie* case that Guinea consented to delegate to a commercial arbitration tribunal the power to decide whether that commercial arbitral tribunal had jurisdiction over Guinea.  As a result, the Court lacks subject matter jurisdiction.

GVG's Opposition (Dkt. 17) fails to rehabilitate the deficiency of its Complaint.  GVG relies on a string of inapposite cases in which the sovereign defendant was manifestly party to the instrument (a contract or treaty) that contained an arbitration agreement.  None of the cases cited in GVG's Opposition address the facts before this Court.  In this case, the sovereign state (Guinea) is manifestly not a party to the instrument that contains the arbitration clause, the Partnership Agreement.  The Partnership Agreement was governed by Guinean law.  It defined the Parties to include only GVG and the Postal Telecommunications and Regulatory Authority ("PTRA") of Guinea.[1]  Guinea was excluded from that definition.  Plaintiff cites no case in which a contract with an arbitration clause ***to which the sovereign was not party*** was found to constitute *prima facie* evidence that the sovereign state agreed to arbitrate and was thus deprived of its immunity from suit.

The arbitration agreement in Article 17 of the Partnership Agreement does not establish a *prima facie* case of an arbitration agreement to which Guinea is party.  To bridge that gap, GVG relies upon a commercial arbitration tribunal's determination (later affirmed by the French Court of Appeal) that Guinea was considered a party to the Partnership Agreement because of how "intertwined" Guinea became with the supervision and administration of the Partnership Agreement.[2]  GVG argues that the tribunal's determination satisfies GVG's burden of production

---

1.  *See* Dkt. 4-6 at p. 1.  The PTRA is not a sovereign state.  Rather, the PTRA is a public legal entity established under Guinean law that is under the supervision of the Minister of Posts, Telecommunications and Digital Economy.  *See* Dkt. 4-1 at ¶ 2.  GVG does not allege that the PTRA is Guinea's alter ego.

2.  Dkt. 17 pp. 17–18 (citing Dkt. 4-1 at ¶¶ 145–53).  Article 17 of the Partnership Agreement specified that "[t]his Agreement is subject to the laws of the Republic of Guinea."  Dkt. 4-6 at Art. 17.  Although the arbitral tribunal's authority derived from the arbitration agreement in Article 17, the arbitral tribunal applied French law rather than Guinean law to reach its conclusion that Guinea was so intertwined with the PTRA that it was a party to the Partnership.  *See* Dkt. 4-1 at ¶¶ 145, 152.  The French Court of Appeals similarly failed to apply Guinean

to establish the applicability of the arbitration exception to sovereign immunity. *See* Dkt. 17 at p. 24 (citing Dkt. 4-1 at paras. 145–53). GVG further contends that this Court "must accept the arbitral tribunal's determination that it possessed jurisdiction over Guinea." *See* Dkt. 17 at p. 23 (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 879 (D.C. Cir. 2021) (adjudicating jurisdiction under the arbitration agreement in a multilateral investment treaty to which the sovereign was a party)).

How does GVG reach the conclusion that a United States District Court must give deference to findings contained in an international arbitral award applying foreign law for purposes of assessing its subject matter jurisdiction and sovereign immunity? GVG does so through circular reasoning. GVG argues that Article 17 of the Partnership Agreement referred to the Arbitration Rules of the International Chamber of Commerce (the "ICC Rules"), and that, because the ICC Rules contain a provision that empowers commercial arbitral tribunals to determine their own jurisdiction, Guinea consented to the jurisdiction of a commercial arbitration tribunal to determine whether it had jurisdiction over claims against Guinea. *See* Dkt. 17 at pp. 20–23. GVG's argument thus presumes its own conclusion. Guinea could only have delegated authority to the commercial arbitration tribunal to determine its jurisdiction over Guinea if Guinea had been a party to the Partnership Agreement that contained that delegation.

---

law to the arbitration agreement. The French court concluded that the Agreement's explicit reference to Guinean law was insufficient evidence of the parties' intent that Guinean law govern the Agreement's arbitration clause. Dkt. 4-5 at p. 6. The French court further remarked, with a logic evoking France's colonialist history, that applying Guinean law to the arbitration agreement in Article 17 of the Partnership Agreement, a contract between a Spanish company and a Guinean public company that was to be performed in Guinea would violate French arbitration law. *Id*. at p. 5.

GVG's circular argument is not only flawed as a matter of logic.  The Federal Circuit and Second Circuit have expressly rejected it.[3]  The United States Supreme Court, for its part, has found that the fact that a non-party to an arbitration agreement vigorously argues its non-party status to the arbitrator does not preclude full judicial review.[4]  GVG's argument is that this Court must defer to a determination made by a foreign commercial arbitral tribunal in evaluating the Court's subject matter jurisdiction.  Guinea has consistently contested the jurisdiction of the arbitral tribunal.  GVG's inclusion in the Complaint of a tautology that is unsupported by any precedent from the D.C. Circuit and that has been expressly rejected by both the Second Circuit and the Federal Circuit cannot discharge a plaintiff's burden of production under 28 U.S.C. § 1605.  Nor should it cause this Court to abdicate its duty to assess independently whether the Court has subject matter jurisdiction by deferring to a determination made by a foreign commercial arbitral tribunal.[5]

---

3.  *See* Part II.B *infra* (discussing *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350 (Fed.Cir.2004); *Contec Corporation v. Remote Solution, Co.*, 398 F.3d 205 (2d Cir. 2005).

4.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995) ("merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point. To the contrary, insofar as the Kaplans were forcefully objecting to the arbitrators deciding their dispute with First Options, one naturally would think that they did not want the arbitrators to have binding authority over them.").  The Kaplans objected that they were not a party to the contract containing the arbitration agreement.  *See id.* at 941.

5.  *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction . . . [i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.");  *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("Federal courts have an independent obligation to ensure that they do not exceed the scope of their subject matter jurisdiction and thus must raise and decide jurisdictional questions that the parties either overlook or elect not to press.");  *Flaherty v. Ross*, 373 F. Supp. 3d 97, 99 (D.D.C. 2019) ("[F]ederal courts also have an independent obligation to determine whether subject-matter jurisdiction exists, even when jurisdictional defects are not specifically identified by the parties.") (citations omitted).

The Complaint contains no allegations that, if proven, would constitute clear and unmistakable evidence of Guinea's intention to grant jurisdiction to the commercial arbitral tribunal to decide disputes about the tribunal's jurisdiction over Guinea.  The United States Supreme Court held in *First Options of Chicago, Inc. v. Kaplan* that courts may not presume that parties to an arbitration agreement intended to delegate to arbitral tribunals disputes over the existence of an arbitration agreement unless there is clear and unmistakable evidence that the parties intended to do so.  *See* 514 U.S. 938 (1995).  In the absence of such clear and unmistakable evidence, disputes over the existence of an arbitration agreement are for the courts to decide, whether before the arbitration or, as in this case, afterwards with *de novo* review.  In light of GVG's reliance on the commercial arbitral tribunal's award, Plaintiff's Complaint needed to allege facts that, if proven, would show Guinea had "clearly and unmistakably" delegated to the arbitrators the authority to determine their jurisdiction over Guinea.  The Complaint alleges no facts that, if proven, would satisfy this standard.  As a result, GVG has failed to establish *prima facie* the existence of an arbitration agreement to which Guinea was a party and thus failed to meet its burden of production to establish the applicability of the arbitration exception to sovereign immunity.  As a result, Guinea retains sovereign immunity from suit in the courts of the United States and this Court lacks subject matter jurisdiction (Part II).

Even assuming *arguendo* that GVG had met its burden of production to establish the applicability of the arbitration exception to sovereign immunity, this Court would still lack personal jurisdiction over Guinea.  The FSIA provides the exclusive basis for establishing personal jurisdiction over a sovereign state.  It does so through the service of process provisions in 28 U.S.C. § 1608.  The case-law of this Circuit requires strict compliance with 28 U.S.C. §

5

1608, and GVG failed to meet that requirement.  As a result, this Court lacks personal jurisdiction.

Plaintiff attempts to excuse its failure by reference to Guinea's designation of the Guinean Judicial Agent in the arbitral proceedings, whom it authorized to accept service for purposes of the arbitration and contesting the tribunal's jurisdiction.  GVG further attempts to excuse its failure by reference to the official authorized to represent Guinea in proceedings brought by Guinea before the French Court of Appeals.  Guinea's designation of officials authorized to act on its behalf in those foreign proceedings was not an authorization for those officials to accept service of process for proceedings before a United States District Court.  It is Plaintiff's burden to establish personal jurisdiction under 28 U.S.C. § 1608.  Plaintiff has failed to do so.  As a result, this Court lacks personal jurisdiction.  (Part III).

Because the Court lacks both subject matter jurisdiction and personal jurisdiction, good cause exists to set aside the entry of default, and the Court should accordingly set aside the default and dismiss the case for lack of subject matter jurisdiction, or in the alternative, for lack of personal jurisdiction.

## II.    THE COURT LACKS SUBJECT MATTER JURISDICTION ON THE GROUNDS OF SOVEREIGN IMMUNITY

Plaintiff relies upon two exceptions to sovereign immunity in the FSIA in its attempt to strip Guinea of sovereign immunity and establish this Court's subject matter jurisdiction; both exceptions are based on the arbitration clause in the Partnership Agreement.  *See* Dkt. 17 at pp. 23–28.  Plaintiff's Complaint fails to establish the applicability of either exception.  To overcome the presumption of sovereign immunity, in an action to enforce an arbitration award, Plaintiff "bear[s] an initial burden of producing (1) a valid arbitration agreement, (2) an award made pursuant to that agreement, and (3) a treaty in force calling for the recognition and enforcement

of the award." *Chiejina v. Federal Republic of Nigeria*, 2022 WL 3646377 at *4 (D.D.C. Aug. 24, 2022) (citing *Chevron v. Republic of Ecuador*, 795 F. 3d 200, 204 (D.C. Cir. 2015)). Regarding the first of these elements, Plaintiff relies on an arbitration agreement in a contract that explicitly defines Parties to include only GVG and PTRA, but not Guinea. The Partnership Agreement thus cannot constitute *prima facie* evidence of an arbitration agreement, because Guinea was not a party to it (Part A).

GVG therefore relies upon the decision of the commercial arbitration tribunal. The arbitral tribunal acknowledged that "the content of the Partnership Agreement, like that of the Amendment or the Addendum, makes no mention of [Guinea], nor does it impose any obligation on [Guinea][.]" Dkt. 4-1 at para. 127. Nevertheless, the arbitral tribunal found that Guinea had become so "intertwined" with PTRB through its supervision that Guinea was effectively a Party to the contract. *See* Dkt. 17 at nn. 81–82 (citing Dkt. 17-2 at paras. 23–26, Dkt. 4-1 at paras. 125, 145–53). GVG argues that this Court must defer to that determination. According to GVG, this Court owes deference to the arbitral tribunal because the arbitration agreement in the Partnership Agreement contained a reference to the ICC Rules, and under the ICC Rules arbitrators have the power to determine their own jurisdiction. GVG's argument is circular, is unsupported by the case law of the D.C. Circuit, and has been explicitly rejected by the Federal and Second Circuits. (Part B).

### A. Plaintiff Has Not Presented *Prima Facie* Evidence of an Arbitration Agreement with Guinea

Plaintiff claims that the allegation that Guinea is not a party to the Partnership Agreement "is irrelevant to the determination of this Court's subject matter jurisdiction[,]" and accuses Guinea of "conflat[ing] the jurisdictional standard of the FSIA with the standard for review under the New York Convention." Dkt. 17 at p. 27 (quoting *Chevron v. Republic of Ecuador*,

795 F. 3d 200, 205 (D.C. Cir. 2015)).  However, Plaintiff ignores the initial part of the D.C.

Circuit Court's holding in *Chevron*, and misapplies it in a manner that elides the distinguishing

fact in this case, namely that Guinea was manifestly not a party to the instrument (the Partnership

Agreement) that contained an arbitration agreement.

      The D.C. Circuit stated that:

> As the plaintiff, Chevron bears the initial burden of supporting its
> claim that the FSIA exception applies.  This is only a burden of
> production; the burden of persuasion rests with the foreign
> sovereign claiming immunity, which must establish the absence of
> the factual basis by a preponderance of the evidence. Chevron has
> met its burden of production by producing the BIT, Chevron's
> notice of arbitration against Ecuador, and the tribunal's arbitration
> decision.

*Chevron*, 795 F. 3d at 204 (citations omitted).  The D.C. Circuit further explained:  "The [FSIA]

requires the District Court to satisfy itself that the party challenging immunity has presented

*prima facie* evidence of an agreement between the parties and that the sovereign asserting

immunity has failed to sufficiently rebut that evidence."  *Id.* 205 n.3 (characterizing the District

Court's failure to consider these questions as part of an analysis of its jurisdiction as an "error.").

Multiple cases in this Circuit have held that the party challenging immunity will satisfy its *prima*

*facie* burden by producing an instrument **to which the sovereign was party** that contained an

arbitration clause (such as a treaty or a contract).  *E.g.*, *LLC SPC Stileks v. Republic of Moldova*,

985 F.3d 871, 877–78 (D.C. Cir. 2021) (investment treaty); *Stati v. Republic of Kazakhstan*, 199

F.Supp.3d 179, 188 (D.D.C. 2016) (investment treaty); *BCB Holdings Ltd. v. Gov't of Belize*,

110 F. Supp. 3d 233, 238, 244 (D.D.C. 2015) (settlement contract with Government of Belize

itself); *Chiejina v. Federal Republic of Nigeria*, 2022 WL 3646377 at *1, *4 (D.D.C. Aug. 24,

2022) (contract with Nigeria itself).  Because the sovereign in each of those cases was party to

the treaty or contract at issue, the document constituted *prima facie* evidence of the sovereign's

consent to arbitration.  Thus, there was no dispute as to whether the sovereign was party to the instrument that contained the arbitration agreement.[6]

The case cited by Plaintiff, *Chiejina v. Federal Republic of Nigeria*, summarizes this line of case-law as follows:

> In sum, each of these cases rejected challenges to the court's jurisdiction under the arbitration exception that rested, essentially, on the premise that ***a given petitioner or claim*** was not encompassed by the underlying agreement to arbitrate with the foreign sovereign.  In every case, those challenges were held to implicate only the merits of the petition, rather than the court's jurisdiction under the FSIA. And those challenges are identical in all material respects to the one made by Nigeria here [that the private party was not a beneficiary of the contract or its arbitration clause].

2022 WL 3646377 at *5 (emphasis added).  Thus, in the line of cases relied upon by the Plaintiff, there was no dispute that the state was a party to the instrument containing the arbitration agreement.  In those cases, the sovereign instead challenged whether the petitioner was entitled to rely on the arbitration agreement or whether the matter submitted to arbitration was within the scope of the arbitration clause.  Doubts about what claims could be brought in arbitration or which private party was entitled to bring those claims were irrelevant to the analysis of whether the arbitration exception to sovereign immunity applied, because there was no doubt that the state was party to the arbitration agreement.

The situation here is entirely different.  In this case, the ***sovereign*** was manifestly ***not*** party to the relevant instrument that contained the arbitration agreement.  Thus, that instrument

---

6.  Where there is no doubt that a sovereign is a party to an instrument with an arbitration clause, the D.C. Circuit has held that any further questions bearing on the existence or validity of the arbitration agreement—such as whether the private party met the various requirements in the investment treaty's arbitration clause, or whether the domestic law contract was valid or conferred rights onto the particular petitioner—were properly viewed as defenses to enforcement under the New York Convention.

cannot constitute *prima facie* evidence of the sovereign's agreement to arbitrate.  Plaintiff has presented ***no case*** in which a court held that an instrument to which a sovereign was not a party constituted *prima facie* evidence that the sovereign had agreed to arbitrate and was deprived of immunity by the arbitration exception under the FSIA.

The Second Circuit Court of Appeals explicitly considered the situation presented by this case.  The Second Circuit held that an instrument containing an arbitration clause to which the sovereign state is not party is ***not*** *prima facie* evidence that satisfies a plaintiff's burden under the FSIA to overcome a state's sovereign immunity.  In *Gater Assets Ltd. v. Moldovagaz*, the contract containing the arbitration agreement was between the petitioner's insured and a Moldovan state-owned company.  As in the case at bar, the sovereign (Moldova) was not a party to the contract that contained the arbitration agreement.  2 F.4th 42, 50 (2d Cir. 2021) ("[T]he Republic [of Moldova] was not a party to the underlying arbitration agreement.").  The Second Circuit reversed the district court's finding that the arbitration exception applied and affirmed Moldova's sovereign immunity, because Moldova was not a party to the underlying arbitration agreement (and the petitioner had not alleged any other legal or factual theory to bind Moldova to the agreement):

> With respect to the Republic, Gater's claim against it does not fit within an FSIA immunity exception. The district court invoked the exception for actions to confirm arbitration awards issued pursuant to a qualifying agreement "made by the foreign state." 28 U.S.C. § 1605(a)(6). ***But the Republic was not a party to the underlying arbitration agreement***.  Recognizing this fact, the district court relied on direct benefits estoppel to hold that the immunity exception nevertheless applied. It is not clear to us, however, that a theory of direct benefits estoppel can establish that a foreign state "made" an agreement to which it was not a party. . . . The district court, therefore, lacked subject-matter jurisdiction over Gater's renewal claim against the Republic."

10

*Id.* (emphasis added).  The Court of Appeals remanded the case with instructions to dismiss pursuant to defendants' motion under Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure for lack of jurisdiction.  The Court should do the same in this case.

Plaintiff's Complaint failed to establish a *prima facie* case for the existence of an arbitration agreement to which Guinea was party.  It explicitly relies on the Partnership Agreement as the document that contains the alleged arbitration agreement with Guinea.  *See* Dkt. 17 at pp. 26–27.  However, the Partnership Agreement defines only the PTRA and Plaintiff—***not Guinea***—as "Parties" of the agreement.  *See* Dkt. 4-6 at p. 2.[7]  These facts are insufficient to carry Plaintiff's burden of production under the FSIA.

### B. Plaintiff's Reliance on the Commercial Arbitration Tribunal's Award Does Not Discharge Plaintiff's Burden of Production

The Partnership Agreement failed to establish the applicability of the arbitration exception to sovereign immunity.  Plaintiff addresses this deficiency by arguing that this Court must defer to the commercial arbitration tribunal's determination that Guinea was a party to the Partnership Agreement.  *See* Dkt. 17 at pp. 3, 20–23.  GVG asserts that this Court owes deference to a foreign arbitral tribunal, because the arbitration clause found in Article 17 of the Partnership Agreement contained a reference to the ICC Rules and those Rules allowed arbitral tribunals, rather than courts, to determine disputes over their jurisdiction in the first instance.  *See* Dkt. 17 at p. 21 (citing Dkt. 4-6 at Art. 17).

---

7. The First Amendment and the Addendum to the Partnership Agreement similarly each name only PTRA and Plaintiff as the "Parties".  Dkt. 4-7, 4-8.  The arbitral tribunal acknowledged that "the content of the Partnership Agreement, like that of the Amendment or the Addendum, makes no mention of [Guinea], nor does it impose any obligation on [Guinea][.]"  Dkt. 4-1 at ¶ 127.

But GVG cannot rely on an arbitration agreement in a contract to which Guinea is not a party to conclude that Guinea agreed to delegate to the arbitrators the authority to decide whether it was a party to that contract.  The United States Supreme Court requires more than a tautology to displace the court's traditional role is determining the existence of an arbitration clause.  "Unless **the parties** clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986) (emphasis added).  A reviewing court necessarily must determine who "the parties" are that "clearly and unmistakably provide otherwise."  As one court has stated:

> Even where express contractual language exists to show an intent to arbitrate questions of arbitrability, the Court must consider whether the "parties" at issue fall within the scope of the delegation language.  It is only presumed that questions of arbitrability should be arbitrated when such a delegation binds 'the parties' involved. If the binding nature of the parties is unclear, then the Court must review whether the parties are subject to the arbitration of arbitrability.  *See Howsam*, 537 U.S. at 83, 123 S.Ct. 588 ("... unless the *parties* clearly and unmistakably provide otherwise.").

*In re Paragon Offshore PLC*, 588 B.R. 735, 753 & n. 90 (D. Del. 2018).  The Plaintiff's Complaint contains no allegations that would begin to satisfy the standard set by the Supreme Court.

Plaintiff has presented no case in which a party to an arbitration agreement was able to invoke a delegation clause against a non-party (let alone to strip a non-party **sovereign** of its immunity from suit).  And in fact, the Federal Circuit expressly rejected an attempt to do the former, where the delegation clause invoked **the exact same arbitration rules**—the ICC Rules— as in the case at bar.  In *Microchip Tech. Inc. v. U.S. Philips Corp.*, Philips, a party to a license agreement, tried to commence arbitration under that agreement against Microchip, who was not a

party.  367 F.3d 1350, 1353 (Fed.Cir.2004).  The arbitration agreement called for arbitration in accordance with the ICC Rules, which, in turn, empowered the arbitrators to rule on challenges to their jurisdiction.  *Id.*  Microchip, the non-party, objected to arbitration, and argued that "the question of whether Microchip was a party to the 1983 agreement was a gateway issue for the district court to resolve prior to referring the matter to arbitration."  *Id.* The district court agreed, and the Federal Circuit affirmed: ***notwithstanding the provision incorporating the ICC Rules***, "the district court must determine whether Microchip was a successor party to the 1983 agreement before any issue may be referred to arbitration under that agreement."  *Id.* at 1358.

The following year, the Second Circuit was confronted with the converse situation: a non-party to an arbitration agreement invoked that arbitration agreement (and the delegation clause within it) against someone who was party to it.  In *Contec Corporation v. Remote Solution, Co.*, a non-party (Contec) to the arbitration agreement sought to enforce an arbitration agreement against a party to that agreement (Remote Solution), including to arbitrate the question of arbitrability.  398 F.3d 205, 207 (2d Cir. 2005).  The Second Circuit found for Contec.  It distinguished the Federal Circuit's decision in *Microchip* as follows:

> Moreover, in Microchip, ***the party that urged arbitration was the signatory to the arbitration agreement and the party that sought to avoid arbitration was the non-signatory***. *Id.* at 1353. In this case, as in Apollo, the party seeking to avoid arbitration was a signatory to the arbitration agreement. Although the Microchip court found this distinction irrelevant, id. at 1358, ***we find it an important indicator*** of Remote Solution's expectation and intent when binding itself to the 1999 Agreement.

*Id.* at 210–11 (emphases added).  Both *Contec* and *Microchip* recognized that a defendant who is not a party to an arbitration agreement cannot be presumed to have consented to allow an arbitrator to determine if that defendant is a party to the arbitration agreement.

The fact that Guinea appeared in the arbitration to assert its status as a non-party to the Partnership Agreement cannot constitute clear and unmistakable evidence of an intent to delegate gateway issues of arbitrability to the arbitrator.  In *First Options of Chicago, Inc. v. Kaplan*, the Kaplans objected that their dispute with First Options was arbitrable because they were not themselves parties to the arbitration agreement.  514 U.S. 938, 941 (1995).  The Supreme Court found that the fact that the Kaplans argued their non-party status to the arbitrator did not demonstrate their intent to have an arbitrator decide arbitrability.  Rather, the Supreme Court held that the Kaplans preserved their right to full judicial review of the question of whether they were obligated to arbitrate with First Options:

> On the record before us, First Options cannot show that the Kaplans clearly agreed to have the arbitrators decide (i.e., to arbitrate) the question of arbitrability. First Options relies on the Kaplans' filing with the arbitrators a written memorandum objecting to the arbitrators' jurisdiction. But merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point. To the contrary, insofar as the Kaplans were forcefully objecting to the arbitrators deciding their dispute with First Options, one naturally would think that they did not want the arbitrators to have binding authority over them

*Id.* at 946.  As with the Kaplans, the fact that Guinea contested the arbitral tribunal's jurisdiction cannot constitute clear and unmistakable evidence of Guinea's intention to delegate to the arbitrators authority to determine whether Guinea was obligated to arbitrate under a contract to which it was not a party.  The Supreme Court's reasoning in *First Options* applies with even greater force in the context of sovereign immunity.  The issue for the Kaplans was whether they had preserved the right to judicial review.  In this case, as a foreign sovereign Guinea presumptively enjoys sovereign immunity from suit unless Plaintiff is able to discharge its burden to establish this Court has subject matter jurisdiction by presenting a *prima facie* case that

one of the exceptions to sovereign immunity in the FSIA applies.  For the same reason, the fact that Guinea challenged the arbitral tribunal's decision before the French Court cannot constitute clear and unmistakable evidence of Guinea's consent to allow the tribunal to determine its jurisdiction.

This Court's duty to assess its subject matter jurisdiction cannot be subordinated to the conclusions reached by the arbitral tribunal in its award even on a *prima facie* basis.  To meet its burden of production and establish this Court's subject matter jurisdiction, Plaintiff's Complaint needed to allege facts that, if proven, would constitute clear and unmistakable evidence of the Republic of Guinea's intention to delegate that decision to the arbitrator.  Plaintiff's Complaint contains no such allegations.  Instead of factual allegations, Plaintiff's argument starts with the assumption that Guinea was a party to the arbitration agreement to conclude that this Court must accept an arbitral tribunal's conclusion that Guinea was party to the arbitration agreement.

Once the circularity of Plaintiff's reasoning is exposed, it becomes apparent that the ICC Award (and the decision of the French Court of Appeal affirming it) do not satisfy GVG's burden of production with respect to the existence of an arbitration agreement to which Guinea is a party.  The circularity of Plaintiff's argument is particularly problematic in this case because it implicates the Court's subject matter jurisdiction.  Plaintiff asks this Court to delegate its obligation to independently assess its subject matter jurisdiction by affording deference to decisions made by a foreign arbitral tribunal and foreign court applying foreign law, but without any allegations that, if proven, would constitute clear and unmistakable evidence of Guinea's intent to delegate to the arbitrators the power to decide whether Guinea was bound by the

arbitration agreement.[8]  Plaintiff's Complaint failed to meet its burden of producing *prima facie*

evidence of an arbitration agreement to which Guinea is party.[9]  Guinea remains presumptively

immune and this Court lacks subject matter jurisdiction and should dismiss under Rule 12(h)(3)

of the Federal Rules of Civil Procedure ("[i]f the court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action").

### III.    ALTERNATIVELY, THE COURT LACKS PERSONAL JURISDICTION BECAUSE OF DEFICIENT SERVICE

Even if the Court finds that it has subject matter jurisdiction, GVG's Opposition and

supporting documents do not cure its deficient service.  Accordingly, this Court lacks personal

jurisdiction.  If Guinea were a party to the Partnership Agreement as GVG alleges in its

Complaint (*see* Dkt. 1 at para. 16), then the FSIA obligated GVG to attempt service of process

pursuant to 28 U.S.C. § 1608(a)(1) before attempting other methods of service.  Because GVG

did not do so, its service was deficient.  As a result, this Court lacks personal jurisdiction and

must either dismiss or require GVG to re-serve in compliance with the FSIA.

GVG dismisses 28 U.S.C. § 1608 (and the case-law of this Circuit interpreting that

statute) as "litigation contrived, lack[ing] merit, and [ ] directly contrary to Guinea's

representations in the arbitration."  Dkt. 17 at p. 3.  The FSIA is no contrivance.  Compliance

with 28 U.S.C. § 1608 is how a plaintiff establishes personal jurisdiction over a sovereign state

before this Court.  "Before a court can exercise jurisdiction over a foreign state, 'a plaintiff ***must***

effect service in compliance with the [FSIA].'" *Von Pezold v. Rep. of Zimbabwe*, 2022 U.S. Dist.

---

8.  15 James Wm. Moore et al., *Moore's Federal Practice* ¶ 100.20[2] (3d ed. 2010) ("Only Congress can delineate the subject matter jurisdiction of the lower federal courts.").

9.  Had GVG's Complaint alleged facts that would constitute clear and unmistakable evidence of an intent to arbitrate arbitrability, then Guinea would have had the opportunity to respond to them in connection with its sovereign immunity defense.

Lexis 159797, * 3 (D.D.C. Sept. 6, 2022) (quoting *Barot v. Embassy of the Rep. of Zambia*, 785

F.3d 26, 27 (D.C. Cir. 2015)) (emphasis added); *see also* 28 U.S.C. §1330(b) (providing for

personal jurisdiction "where service has been made under [§]1608"); Fed. R. Civ. P. 4(j)(1) ("A

foreign state … must be served in accordance with … §1608.").

The D.C. Circuit has repeatedly made clear that "strict adherence to the terms of [28

U.S.C. §] 1608(a) is required" to establish personal jurisdiction over a foreign sovereign.

*Transaero v. La Fuerza Aerea Boliviana*, F.3d 148, 154 (D.C. Cir. 1994) (voiding default

judgment for lack of service); *see also Barot v. Embassy of the Republic of the Zambia*, 11 F.

Supp. 3d 33, 35–36 (D.D.C. 2014) ("this Court is bound to follow the Circuit Court's directive to

require strict adherence to [§]1608(a)'s plain language when evaluating defendant's challenge to

plaintiff's service."); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2005) ("The

requirements of § 1608(a) are applied strictly.").

Under this Court's case-law, strict compliance with 28 U.S.C. § 1608(a) means that

"[p]laintiffs must attempt service by each method, ***in order***, ***before*** proceeding to the next

available method." *Hardy Exploration & Production (India), Inc. v. Government of India*, 219

F.Supp.3d 50, 57 (D.D.C. 2016) (emphasis added).  This Court regularly requires plaintiffs who

"skip" any of the successive service methods set forth in 28 U.S.C. § 1608(a) to re-serve.  *See*

*Przewozman v. Islamic Republic of Iran*, Civil Action No. 19-2601 (RDM), 2022 U.S. Dist.

LEXIS 169153, at *21 (D.D.C. Sep. 19, 2022) ("Courts already require plaintiffs who entirely

skip one of § 1608(a)'s service methods to go back and try again.") (citations omitted).[10]  GVG

---

10. This is why plaintiffs include in their applications to the court for service of process pursuant
    to 1608(a)(3) or 1608(a)(4) explanations as to why the prior methods were not available.  *See,*
    *e.g.*, Request for Service of Process, Dkt. 8, *Stabil LLC et al v. The Russian Federation*, (D.C.
    Cir. Case No. 22-cv-00983-TNM).

bears the burden of demonstrating it effected service properly, and it has not met that burden. *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (collecting cases).

Plaintiff attempts to take out of context and misuse statements made by Guinea in the arbitration and before the French Court of Appeal to excuse Plaintiff's failure to comply with the requirements of 28 U.S.C. § 1608(a).  Plaintiff's Opposition makes an impermissible quantum leap in reasoning (unsupported by any case-law under the FSIA) that a sovereign state's designation of officials authorized to act for it before an arbitral tribunal for purposes of contesting jurisdiction and the initiation of proceedings before a foreign court by state officials absolves Plaintiff of its obligation to strictly comply with 28 U.S.C § 1608(a) in order to establish this Court's personal jurisdiction.  *See* Dkt. 17 at pp. 30–33.  It is "a fundamental rule of jurisprudence" that, as a sovereign state, Guinea's consent to this Court's jurisdiction cannot be presumed.  *Ex parte N.Y.*, 256 U.S. 490, 497  (1921) ("That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given[.]").

It is the FSIA alone that establishes the requirements that must be met to establish this Court's personal jurisdiction over a foreign sovereign.  Positions taken by Guinea in international arbitration proceedings or before the courts in France about which state officials were authorized to act for Guinea in those proceedings for purposes of contesting the arbitral tribunal's jurisdiction over Guinea cannot amend, relax, or replace the service of process provisions in the FSIA at 28 U.S.C. § 1608.  Simply put, the FSIA does not permit a United States federal court to

exercise personal jurisdiction over a foreign sovereign simply because that foreign sovereign authorized an official to represent it in foreign proceedings.

The implications of Plaintiff's argument are extreme.  The service of process provisions of 28 U.S.C. § 1608 would be rendered meaningless if a plaintiff could establish the personal jurisdiction of a federal court over a foreign sovereign state simply by identifying a state official who was authorized to act on behalf of the state in a foreign proceeding and mailing that official the Complaint.  Guinea's choice of representatives in foreign proceedings have no bearing on establishing personal jurisdiction under 28 U.S.C. § 1608.

Plaintiff's Declarant, Marianne Kecsmar, makes the irrelevant observation that, "Guinea's legal counsel stated that Guinea could only be properly served if notice was sent to Guinea's 'Judicial Agent' (Agent Judiciaire de l'Etat) . . . Guinea submitted to the arbitral tribunal a power of attorney from that Judicial Agent on October 15, 2018."  Dkt. 17-2 at para. 28.  She further argues that, "[a]s to service, during the arbitration, Guinea argued that it had not been properly served when the Secretariat of the ICC delivered the request for arbitration, in accordance with the ICC Arbitration Rules, to the Minister of Posts, Telecommunications and New Information Technology ('Minister of Posts')."  Dkt. 17-2 at para. 27.  These statements are irrelevant to any of the service of process provisions in the FSIA at 28 U.S.C. § 1608, which is the exclusive means of establishing the personal jurisdiction of this Court.

Plaintiff's reliance on the French Court of Appeal proceedings as establishing Guinea's consent to service of process in the United States is equally misplaced.  As Plaintiff's Declarant acknowledges, "Guinea's legal counsel then filed the annulment proceedings before the Paris Court of Appeal through its Judicial Agent and the Minister of Posts."  Dkt. 17-2 at para. 30.  As a foreign sovereign, Guinea was free to initiate proceedings before the French Court of Appeal

for purposes of challenging the arbitral tribunal's erroneous determination that Guinea was a party to the Partnership Agreement.  The fact that a non-party to an arbitration agreement vigorously contests the jurisdiction of an arbitral tribunal cannot, as a matter of law, constitute consent to be bound by that body's decision.

It was Plaintiff's obligation to establish this Court's personal jurisdiction over Guinea. The case-law of this Court interpreting 28 U.S.C. § 1608(a) is clear.  Because Plaintiff's basis for this Court's subject matter jurisdiction (the arbitration exception) is predicated on Plaintiff's contention that Guinea is a party to the Partnership Agreement, Plaintiff must treat Guinea as a party to the Partnership Agreement for *all* purposes, including the service of process provisions of Article 11 of the Partnership Agreement.  If Guinea is a party to the Partnership Agreement (a fact on which Plaintiff's case for this Court's subject matter jurisdiction depends), then Plaintiff was obligated to serve process on Guinea under the service of process provision in Article 11 of the Partnership Agreement as a matter of the law of sovereign immunity in the United States. The FSIA obligated Plaintiff to attempt to effectuate service of process under a "special arrangement for service between the plaintiff and the foreign state" before attempting service under other provisions.  28 U.S.C. § 1608(a)(1).  Plaintiff did not do so.  This is not a question of a "contrived" technicality.  It is a question of compliance with the statutory regime enacted by Congress in 1976 (the FSIA) to implement an emerging restrictive theory of sovereign immunity, as that law has been interpreted by the D.C. Circuit.

Plaintiff cannot insist that Guinea was a party to the Partnership Agreement for purposes of the arbitration clause but not for purposes of service.  It is Plaintiff who has the burden of strict compliance with the FSIA's requirements.  Plaintiff served Guinea under 28 U.S.C. § 1608(a)(3) as a foreign sovereign and non-party to the agreement.  Plaintiff's service application

to the Clerk of the Court offered no explanation for why it could not effect service of process under 28 U.S.C. § 1608(a)(1).  *See* Dkt. 8-1.

Plaintiff attempts to excuse its failure to comply with 28 U.S.C. § 1608(a) by asserting that they "could not serve Guinea pursuant to the first two methods of service specified in 28 U.S.C. § 1608(a)(1) or (a)(2) because—contrary to Guinea's newly contrived argument—no 'special arrangement' governs service of process between *the United States* and Guinea, and because Guinea is not a party to an international convention on service of process."  Dkt. 17 at p. 30 (emphasis added).  Here, GVG misreads the statute.  Guinea has never alleged and 28 U.S.C. § 1608(a)(1) does not refer to *any* arrangement for service between Guinea and *the United States*.  Instead, 28 U.S.C. § 1608(a)(1) requires plaintiffs to attempt service first "in accordance with any special arrangement for service between *the plaintiff*[,]" meaning GVG here, "and the foreign state or political subdivision[,]" here Guinea.  The "special arrangement" necessitating service under 28 U.S.C. § 1608(a)(1) here is found in the Partnership Agreement, which GVG has incorrectly alleged and the ICC Award has incorrectly concluded bound both Plaintiff *and* Guinea, even though Guinea was not a party to that instrument.

Alternatively, Plaintiff attempts to excuse its failure to comply with 28 U.S.C. § 1608(a) by arguing that Article 11 of the Partnership Agreement is not a "special arrangement" within the meaning of 28 U.S.C. § 1608(a)(1).  GVG asserts that "contractual notices that are tied to notices relating to the contract[,]" similar in GVG's reading to the notice provision in the Partnership Agreement, "do not qualify as a 'special arrangement' under 28 U.S.C. § 1608(a)(1)[.]"  Dkt.17 at p. 31 (citing *Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d 166, 173 (D.D.C. 2018)).  Here, GVG misrepresents the notice provision in the Partnership Agreement, and mischaracterizes the applicable case-law.

The relevant portion of Article 11 of the Partnership Agreement requires that:  "*All* communications sent pursuant to or *in connection with* this Agreement must be delivered by hand or, by post (ordinary or registered mail with acknowledgement of receipt) or by fax."  Dkt. 4-5 at pp. 8 (emphasis added).  Article 11 further provides that:  "Unless otherwise indicated in writing at least fifteen (15) days beforehand by the Party having changes its address, the address to which notifications shall be sent is: [...] For (PTRA): For the attention of Mr. Nfa Ousmane CAMARA, Director General, Postal and Telecommunications Regulatory Authority (PTRA)[.]" Dkt. 4-5 at pp. 9.

Moreover, GVG misrepresents the case-law on what constitutes a "special arrangement" for service triggering the requirements of 28 U.S.C. § 1608(a)(1).  GVG ignores the Court's reasoning in *Hardy Exploration & Production (India), Inc. v. Government of India*; the plain language of Article 11 is broader ("in connection with" the Partnership Agreement) and more similar to the phrase "relating to," which the Court found "implies a broader, more flexible connection" to the contract and would constitute a "special arrangement" for service under 28 U.S.C. § 1608(a)(1).  219 F.Supp.3d 50, 61, 65 (D.D.C. 2016).  GVG's contentions do not absolve its decision to attempt service under 28 U.S.C. § 1608(a)(3) rather than 28 U.S.C. § 1608(a)(1), and this Court lacks personal jurisdiction as a result.

Plaintiff's attempt to argue that Article 11 was not a "special arrangement" is an afterthought that is incorrect as a matter of law.  Plaintiff's Letter Requesting Service (*see* Dkt. 8-1) offered no explanation as to why Plaintiff believed it was entitled to "skip" service under 28 U.S.C. § 1608(a)(1) and proceed to service of process under 28 U.S.C. § 1608(a)(3).  It stated only that "[w]e respectfully request that the Clerk of the Court mail the above documents by FedEx pursuant to 28 U.S.C. §1608(a)(3) to the following five (5) addresses."  Dkt. 8-1 at p. 1.

Many practitioners before this Court explain in such letters why they are entitled to proceed

under the specific provision.  *See, e.g.*, Request for Service of Process, *Stabil LLC et al v. The*

*Russian Federation*, (D.C. Cir. Case No. 22-cv-00983-TNM).

Guinea's objection to this Court's personal jurisdiction is not some trivial technicality

that Guinea disingenuously invokes to dismiss Plaintiff's Complaint.  Guinea is a sovereign

state.  A sovereign state is presumptively immune from suit before the courts of the United

States.[11]  Plaintiff failed to establish personal jurisdiction, because it failed to comply with the

strict requirements of the FSIA.

## IV.    CONCLUSION

Plaintiff's Opposition commences by disparaging Guinea's motions as a "vexatious third

bite of the apple" and concludes by invoking the legal maxim that "[j]ustice delayed is justice

denied."  Dkt. 17 at pp. 3, 37.  Such rhetorical devices cannot cure the failure by GVG to comply

with the requirements of the FSIA necessary to overcome the firmly established rule of sovereign

immunity from suit.[12]  The requirements of the FSIA that govern the exceptional circumstances

in which this Court may exercise jurisdiction over a foreign sovereign cannot be disregarded by

---

11. *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 70 (D.D.C. 2010) ("Concerning foreign states themselves, this Circuit has squarely held that foreign states are not 'persons' protected by the Fifth Amendment. As the Circuit later put it, as a constitutional matter, there is no constitutional matter.") (quotations omitted).

12. *See* Cong. Rsch. Serv. RL 41379, *Samantar v. Yousef: The Foreign Sovereign Immunities Act (FSIA) and Foreign Officials*, 2 (2013) ("When the United States adopted the restrictive principle of sovereign immunity by administrative action in 1952, the State Department began advising courts on a case-by-case basis whether a foreign sovereign should be entitled to immunity based upon the nature of the claim and foreign policy considerations. In 1978, Congress codified the restrictive principle in the FSIA, so that the decision no longer depended on a determination by the State Department. The FSIA states the general principle that a foreign state is immune from the jurisdiction of the courts of the United States, but sets forth several limited exceptions.").

reference to an equitable legal maxim that has no bearing on the *jurisdiction* of this court, which Congress fixed by statute.  Nor can Plaintiff's use of the staid metaphor of an apple that has been bitten too many times render Guinea's invocation of sovereign immunity "vexatious" where it is the Plaintiff's Complaint that failed to satisfy the requirements of the FSIA necessary for establishing both this Court's subject matter and personal jurisdiction.

Congress has established by statute the limited and exceptional circumstances under which this Court may exercise subject matter jurisdiction and personal jurisdiction over a foreign sovereign.  Plaintiff's Complaint has failed to establish the applicability of the arbitration exception to the FSIA.  Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  In the alternative, this Court lacks personal jurisdiction resulting from GVG's deficient service, and the Court should either dismiss the Complaint or require Plaintiff to re-serve the Complaint in a manner that complies with 28 U.S.C. § 1608.

Dated: February 3, 2023                    Respectfully submitted,

                                           */s/* James H. Boykin
                                           James H. Boykin
                                           Alexander S. Bedrosyan
                                           Carter A. Rosekrans
                                           Hughes Hubbard & Reed
                                           1775 I Street, N.W.
                                           Washington, D.C.  20006-2401
                                           Tel:  (202) 721-4751
                                           Fax:  (202) 721-4606
                                           james.boykin@hugheshubbard.com
                                           *Appearing Specially as Counsel for*
                                           *Defendant Republic of Guinea*