**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GLOBAL VOICE GROUP SA,

                *Plaintiff*,

   v.

THE REPUBLIC OF GUINEA,

                *Defendant*.

Civil Action No. 1:22-cv-02100-JMC

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO DEFENDANT'S MOTION TO STAY PROCEEDINGS**

Draper & Draper LLC
Matthew E. Draper
100 Park Avenue, Suite 1600
New York, NY 10017
Tel: 347 442 7788
matthew.draper@draperllc.com

*Attorneys for Plaintiff*
*Global Voice Group SA*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT     1

LEGAL STANDARD     5

ARGUMENT     6

I.    The Spain Appeal is Not Relevant to Global Voice's Motion for Judgment     6

     A.    Spain and Defendant Offer Two Completely Different Legal Defenses     6

     B.    Unlike Spain, Defendant Consented During the Arbitration to the Tribunal's Jurisdiction to Determine Its Jurisdiction over Defendant     7

II.    Defendant Alleges No Injury Absent a Stay Other Than Litigation Burden     12

III.    A Stay Will Not Improve Judicial Economy     12

IV.    A Stay Increases the Likelihood that Defendants' Assets in the Jurisdiction May be Dissipated     13

V.    The Cases Defendant Cites in Support of its Motion Are Inapposite     14

VI.    Defendant Failed to Reasonably Meet and Confer Before Moving to Stay     16

VII.    Defendant Did Not Ask Global Voice to Withdraw Its Motion     17

CONCLUSION     17

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*9REN Holding S.À.R.L. v. Kingdom of Spain*, 2023 U.S. Dist. LEXIS 25860                        2
(D.C. Feb. 15, 2023)

*A.D. TRADE Belgium S.P.R.L. v. Republic of Guinea*, 1:22-cv-00245-RJL                        13-14

*Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2023 U.S. Dist. LEXIS                       2
*54502 (D.C. Mar. 29, 2023)*

*Blasket Renewable Investments, LLC v. Kingdom of Spain*, No. 23-7038 (D.C.                      2
Cir. 2023)

*Boumediene v. Bush*, 450 F. Supp. 2d 25 (D.D.C. 2006)                                          15

*\*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995)                                   3

*Hilton v. Braunskill*, 481 U.S. 770 (1987)                                                      5

*\*Landis v. North Am. Co.*, 299 U.S. 248 (1936)                                              5, 14

*Nextera Energy Glob. Holdings B.V. v. Kingdom of Spain*, 2023 U.S. Dist.                        2
LEXIS 25862 (D.C. Feb. 15, 2023)

*\*Nken v. Holder*, 556 U.S. 418 (2009)                                                    4, 5, 6, 12,
                                                                                               13

*United States v. Navarro*, 2023 U.S. App. LEXIS 8830 (D.C. Cir., April 12,                      5
2023)

*\*Vallejo Entm't LLC v. Small Bus. Admin.*, No. 1:22-cv-01548, 2023 U.S. Dist.           5, 6, 13, 14,
LEXIS 79406 (D.D.C. May 4, 2023)                                                               15

*Watkins Holdings S.À.R.L. et al. v. Kingdom of Spain*, No. 1:20-cv-01081                      14-15
(D.D.C. June 9, 2023)

**Statutes**

28 U.S.C. § 1927                                                                          1, 16, 17

**Rules of the U.S. District Court for the District of Columbia**

Rule 7                                                                                          16

**Other Authorities**

International Chamber of Commerce (ICC) Rules of Arbitration (2012)  3, 8, 9, 10

Plaintiff GLOBAL VOICE GROUP SA ("Global Voice") submits this Memorandum of Points and Authorities in Opposition to the motion filed by defendant THE REPUBLIC OF GUINEA ("Defendant") to stay proceedings. Dkt. 27, 28.

## PRELIMINARY STATEMENT

Pending before the Court is Global Voice's Motion for Entry of Default Judgment or in the alternative, Entry of Summary Judgment ("Global Voice's Motion for Judgment" and "Motion"). Dkt. 25. That Motion is Global Voice's request that the Court enter judgment: (1) recognizing, confirming and enforcing a final arbitration award ("Final Award") issued on July 18, 2019, by the International Chamber of Commerce's (ICC) International Court of Arbitration, seated in Paris, France, in the matter captioned *Global Voice Group SA (Seychelles) v. The Postal and Telecommunications Regulatory Authority of Guinea (Guinea) and The Republic of Guinea (Guinea)*, ICC Case No. 22467/DDA; and (2) ordering Defendant to pay US$ 22,215,264.90 and EUR 93,532.51, as specified in the Final Award, plus prejudgment interest, plus post-judgment interest, plus costs. *See* Dkt. 25-1 (Proposed Order).

Global Voice is entitled to the relief sought in its Motion for all of the reasons set forth in Global Voice's Memorandum of Law, in the Declarations filed in support of that Motion, and in Global Voice's Reply Memorandum, all of which are incorporated herein to minimize duplication. *See* Dkts. 25, 29.

On July 5, 2023, together with filing an opposition to Global Voice's Motion for Judgment, Defendant moved for a stay (Dkt. 27) and moved for a sanction of attorney's fees against undersigned counsel under 28 U.S.C. § 1927 (Dkt. 26). Global Voice opposes both motions in their entirety. Global Voice responds here to Defendant's motion to stay proceedings (Dkt. 27, 28).

Defendant's request for a stay is based on three district court decisions—*Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2023 U.S. Dist. LEXIS 54502 (D.C. Mar. 29, 2023); *Nextera Energy Glob. Holdings B.V. v. Kingdom of Spain*, 2023 U.S. Dist. LEXIS 25862 (D.C. Feb. 15, 2023); and *9REN Holding S.À.R.L. v. Kingdom of Spain*, 2023 U.S. Dist. LEXIS 25860 (D.C. Feb. 15, 2023)—and on the pending consolidated appeal of those decisions: *Blasket Renewable Investments, LLC v. Kingdom of Spain*, No. 23-7038 (D.C. Cir. 2023) (the "Spain Appeal").

In seeking to align itself with the Spain Appeal, Defendant has hitched its horse to the wrong wagon for all of the reasons set forth in Global Voice's Reply. *See* Dkt. 29. In short, in those decisions—and in the Spain Appeal—sovereign state Spain is alleging that no arbitration agreement exists because Spain is legally incapable of agreeing to arbitrate those disputes under European Union ("EU") law. Spain thus argues that because no arbitration agreement ever existed, this Court does not have subject matter jurisdiction over those proceedings. The Spain Appeal is irrelevant here for at least four reasons:

First, Defendant has identified no law that rendered Defendant legally incapable of agreeing to arbitrate the dispute in the underlying Arbitration.[1] Indeed, before filing its Opposition to Global Voice's Motion fourteen days ago, Defendant never previously made any legal incapacity argument: not before the Arbitration Tribunal, not before the Paris Court of Appeal in the failed annulment proceedings, not even before this Court in Defendant's Motion to Dismiss. *See* Dkts. 4-1 and 4-2 (Final Award); 4-5 (Paris Court of Appeal Judgment); Dkt 16-1 (Defendant's MOL ISO its Motion to Dismiss). If Defendant, in fact, had a legitimate legal incapacity argument, it is astonishing that it would wait so late in the day to raise it.

---

[1] EU law does not apply here. Nor are any of the parties EU States or EU nationals.

Second, in any event, Defendant has now waived its legal incapacity argument. To preserve its right to make that argument in these proceedings, Defendant must have raised it in the Arbitration before the Arbitration Tribunal. Defendant did not do so. *See* Dkts. 4-1 and 4-2 (Final Award); *see also* 4-5 (Paris Court of Appeal Judgment). That argument is now foreclosed.

Third, unlike Spain in the Spain Appeal, Defendant concedes here that a valid Arbitration Agreement exists. *See e.g.*, Dkt. 16-1 (Defendant's MOL ISO its Motion to Dismiss) at 1-3, 10; Dkt. 28 (Defendant's Opposition to Global Voice's Motion) at 1-2, 6, 11-13. Defendant also concedes that its "Minister signed" that Agreement (the "Signature"). Dkt. 28 at 11; *see also* Dkt. 4-1 (Final Award) at ¶10 ("[t]he Partnership Agreement was … signed" by Guinea's "Minister" "[f]*or the Ministry of Telecommunications and New Information Technologies*." Dkt. 4-1 (Final Award) at ¶10 (emphasis in original); *id.* at ¶132 ("the State representative signed the Agreement."). Defendant now argues that it is not bound by that Arbitration Agreement because: (i) it was not expressly defined as a "Party" in the Partnership Agreement," and thus (as argued for the first time in its Opposition) (ii) its Minister's Signature "cannot bind" Defendant to the Arbitration Agreement. Dkt. 28 at 2, 11-12. This is a new legal incapacity argument, for which Defendant provides no evidence and no supporting authority.

Fourth, these proceedings are further distinguishable from the Spain Appeal because here Defendant's conduct during the arbitration demonstrates that it "clearly and unmistakably" agreed to submit issues of arbitrability to the Arbitration Tribunal. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Defendant signed a Terms of Reference at the outset of the Arbitration in which it agreed *again* to the application of the ICC Arbitration Rules ("ICC Rules") and agreed that the Arbitration Tribunal "must" rule on its jurisdictional objection. *See* Dkt. 30-2 (Second Supp. Decl. of Matthew Draper ("2d Supp. Decl. Draper")) at ¶¶ 3-4, and Dkt.

30-4 (Ex. B (Arbitration Terms of Reference, English translation)) at ¶ 114. By contrast, the Spain Appeal does not turn on the conduct of the parties in the arbitration.

Finally, Defendant argues that it is not "obliged to present its defenses under the New York Convention," until the Court first determines whether it has subject matter jurisdiction over these proceedings. Dkt 28 at 9, 10, 12. The Court has not bifurcated these proceedings. In any event, there is no reason why the Court cannot resolve the parties' various motions at the same time. Defendant may wish to keep the door open to have another bite at the apple when the Court finds its jurisdiction challenges unsuccessful. But Defendant has already had every opportunity to litigate its claims before the Arbitration Tribunal, before the Paris Court of Appeal in the failed annulment proceedings, in its motion to dismiss these proceedings, and most recently in its opposition to Global Voice's Motion for Judgment. The door is now closed. Even if the Court were to permit Defendant to untimely appear in these proceedings—which Global Voice respectfully requests that the Court should not (including for the reasons stated in Global Voice's Opposition to Defendant's motion to dismiss (*see* Dkts. 17 and 20-1)—Global Voice urges the Court to see Defendant's late appearance and recent motion practice for what they are: delay tactics.

As explained below, Defendant has (i) failed to make "a strong showing that [Defendant] is likely to succeed on the merits"; (ii) presented no evidence that it "will be irreparably injured absent a stay"; and (iii) if anything, the public interest lies in favor of swiftly and efficiently resolving Global Voice's legitimate claims and motions. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (setting forth legal standard for stay motions) (internal quotation omitted).

For all of the reasons set forth herein, Global Voice respectfully requests that the Court deny Defendant's motion.

# LEGAL STANDARD

Under the traditional standard, a request for a stay of proceedings requires:

> consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *United States v. Navarro*, 2023 U.S. App. LEXIS 8830 at *1 (D.C. Cir., April 12, 2023) (same). The United States Supreme Court has held that "[t]he first two factors of the traditional standard are the most critical." *Nken*, 556 U.S. at 434. If these first two factors are satisfied, "the traditional stay inquiry [then] calls for assessing the harm to the opposing party and weighing the public interest." *Id.* at 435.

In *Vallejo Entm't LLC v. Small Bus. Admin.*, No. 1:22-cv-01548, 2023 U.S. Dist. LEXIS 79406 (D.D.C. May 4, 2023) this Court recently found that where a stay "is considered …. pending resolution of independent proceedings," as opposed to pending an appeal in the same case, "what matters is that the independent proceeding will very likely decide an issue common to both cases." *Id.* The court in *Vallejo* also explained that "[i]n considering a stay pending resolution of independent proceedings, a court "must weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties,"" and that a "stay cannot be … "oppressive in its consequences" and should promote "public welfare or convenience."" *Id.* at *1-2 (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize,* 668 F.3d 724, 733 (D.C. Cir. 2012) and *Landis v. North Am. Co.*, 299 U.S. 248, 254-56 (1936)). "If there is a "fair possibility" that the stay will harm "someone else" or will "work damage" to the plaintiff's interests, the movant must "make out a clear case of hardship or inequity in being required to go forward." *Vallejo*, 2023 U.S. Dist. LEXIS 79406 at *2, 5 (quoting *Landis*, 299 U.S. at 255).

## ARGUMENT

**I.      The Spain Appeal is Not Relevant to Global Voice's Motion for Judgment**

Whether the burden is on Defendant to make "a strong showing that [it] is likely to succeed on the merits," or whether its burden is to show that the Spain Appeal "will very likely decide" an issue that is material to Global Voice's Motion, Defendant has not satisfied that burden. *Nken*, 556 U.S. at 434 (quotation omitted); *Vallejo*, 2023 U.S. Dist. LEXIS 79406 at *4. No resolution of the Spain Appeal will "moot" these proceedings.

### A.      Spain and Defendant Offer Two Completely Different Legal Defenses.

Defendant bears the burden of establishing that the Spain Appeal will "decide an issue common to both cases." *Vallejo*, 2023 U.S. Dist. LEXIS 79406 at *4.  Even a cursory review of the district court cases in the Spain Appeal demonstrates that Defendant cannot show that the resolution of the Spain Appeal will resolve any legal issue before the Court here.

In the Spain Appeal, Spain argues that it lacked legal capacity to enter into the arbitration agreement because EU law rendered it legally incapable of agreeing to arbitrate against EU nationals.  Spain thus alleges that the arbitration agreement between Spain and the plaintiff investors was void *ab initio* and that, therefore, no arbitration agreement exists.  By contrast, Defendant here does not dispute that the Arbitration Agreement exists.  Defendant instead argues here that its Signature "cannot bind" it to the Arbitration Agreement.  Dkt 28 at 11.  Specifically, Defendant argues that because it is not defined as a "Party" in the Partnership Agreement (which contains the Arbitration Agreement), the Signature of its Minister "cannot bind" it to those agreements.  Dkt. 28 at 11.  These are two entirely different legal theories.   One concerns legal capacity; the other concerns contract interpretation.  There is, therefore, no outcome in the Spain Appeal that can have any impact on Defendant's argument here.

Defendant is, therefore, wrong when it aligns itself with the Spain Appeal and alleges that that appeal "will provide important guidance on how to apply the FSIA [where] … a sovereign state contests the very existence of an arbitration agreement."  Dkt. 28 at 3.  Even if the Spain Appeal were to provide guidance on how to apply the FSIA where a sovereign state contests the very existence of an arbitration agreement, those are not the facts here.  Defendant concedes the existence of the Partnership Agreement and its Arbitration Agreement at least as between Global Voice and Defendant's co-respondent in the Arbitration, the Postal and Telecommunications Regulatory Authority of the Republic of Guinea ("PTRA").  Moreover, the argument in the Spain Appeal is made solely in the context of a claim of lack of legal capacity based on EU law—a claim that has no relevance here.

In any event, the legal framework of the Spain Appeal is entirely different.  The Spain Appeal concerns the question of whether U.S. courts have jurisdiction to confirm international arbitral awards obtained by EU nationals against an EU Member State pursuant to an open offer to arbitrate with investors in a multilateral investment treaty, the Energy Charter Treaty ("ECT").  Here, arbitral jurisdiction arises from the Arbitration Agreement, not from an offer to arbitrate in an investment treaty.  In addition, none of the parties here are EU Member States or EU nationals, and EU law does not govern the parties, any aspect of their relationship, or these proceedings.

### B.  Unlike Spain, Defendant Consented During the Arbitration to the Tribunal's Jurisdiction to Determine Its Jurisdiction over Defendant

The Spain Appeal also differs from these proceedings in another important way: here, Defendant consented twice to the Arbitration Tribunal's jurisdiction to determine its own jurisdiction.  First, Defendant consented by signing the Partnership Agreement, which contains the Arbitration Agreement.  Second, Defendant consented when, at the outset of the Arbitration,

Defendant, Global Voice and the Arbitrators signed the "Terms of Reference" which established the arbitral procedure, summarized the parties' claims, and set forth the issues to be decided by the Arbitration Tribunal. *See* Dkt 30-2 (2d Supp. Decl. Draper) at ¶¶ 3-4, and Dkt. 30-4 (Ex. B (Terms of Reference, English translation)); *see also* ICC Rules, Art. 23(1).

In particular, the Terms of Reference reproduce the parties' Arbitration Agreement, quoting Article 17 of the Partnership Agreement *verbatim*. *See* Dkt 30-2 at ¶¶ 3-4, and Dkt. 30-4 (Ex. B) at ¶ 4. The Arbitration Agreement provides for the application of the ICC Rules. Dkt 4-6 (Partnership Agreement) at Art. 17; *see also* Dkt 4-1 (Final Award) at ¶ 93; Dkt 25-2 at 29 ("The 2012 version of the ICC Rules of Arbitration were in force at the time of the parties' dispute, and therefore applied."). In addition, the Terms of Reference separately provide that the Arbitration proceeding will be governed by the ICC Rules effective on January 1, 2012. Dkt 30-2 at ¶¶ 3-4, and Dkt. 30-4 (Ex. B) at ¶ 150. Article 6(3) of the ICC Rules (2012) grants the Arbitration Tribunal the authority to decide jurisdictional questions. *See* Dkt. 25-2 at 29.

Both parties' claims were set forth in the Terms of Reference. Defendant drafted the description in the Terms of Reference of Defendant's primary claim for relief in the Arbitration, which was that the Arbitration Tribunal:

> ***must recognize*** itself as lacking jurisdiction with regard to the Republic of Guinea. [] Indeed, contrary to GVG's assertions, the Republic of Guinea was never a party to the Partnership Agreement …

*Id.* at ¶¶ 114-15 (emphasis added). The Terms of Reference concludes with a provision titled "ISSUES TO BE RESOLVED," which states that:

> The mission of the Arbitral Tribunal is to settle the dispute between the parties by ruling on the aforementioned claims … in accordance with Article 23(4) of the [ICC] Rules.

*Id.* at ¶ 149.

As recorded in the Final (Arbitration) Award, Defendant's counsel fully participated in the drafting and adoption of these provisions of the Terms of Reference:

> 78. By email dated October 12, 2017, the counsel for the parties transmitted their joint observations on the draft Terms of Reference as well as a procedural timetable which they had agreed to.

> 79. By email dated October 13, 2017, the counsel for Respondents transmitted the summary of the Respondents' claims for the purpose of inclusion in the Terms of Reference.

> 80. The Terms of Reference, signed by the representatives of the parties and by the members of the Arbitral Tribunal, is dated October 16, 2017.

Dkt. 4-1 (Final Award) at ¶¶ 78-80. Defendant thus drafted portions of the Terms of Reference, and commented on and agreed to the rest of the Terms of Reference, including the procedural timetable.

Further, the Terms of Reference were signed by representatives of both parties, and by the three arbitrators. Defendant's counsel, Messrs. Marc Henry, Esq., and Agbayissah Sena, Esq., of Hughes Hubbard and Reed LLP, signed the Terms of Reference on behalf of Defendant. *See* Dkt 30-2 at ¶¶ 3-4, and Dkt. 30-4 (Ex. B) at 36-37. There is no dispute here that Defendant was represented by counsel and fully participated in the Arbitration. Dkt. 25-2 at 2, 7; Dkt. 4 (Kecsmar 1st Decl.) at ¶¶ 13-14; Dkt. 4-1 (Ex. A Final Award) at ¶¶ 58, 74, 82, 84, 85, 86, 88-89, 91.

Defendant's conduct during the Arbitration confirms that it "clearly and unmistakably" agreed to submit questions of arbitrability to the Arbitration Tribunal. *First Options*, 514 U.S. at 944. Defendant did this in at least three ways. First, Defendant reaffirmed that the ICC Rules applied. Dkt 30-2 at ¶¶ 3-4, and Dkt. 30-4 (Ex. B) at ¶ 150. This commitment was freely made and, as noted in Global Voice's Motion for Judgment (Dkt 25-2 at 29-30), is significant because

Article 6(3) of the ICC Rules provides that the Arbitration Tribunal shall determine all questions of arbitrability and jurisdiction. ICC Rules, Art. 6(3); *see also* Dkt 30-2 at ¶¶ 3-4, and Dkt. 30-4 (Ex. B) at ¶¶ 4, 150. Second, Defendant specifically demanded that the Arbitration Tribunal "must recognize" that it lacks jurisdiction over Defendant. Dkt. 30-4 (Ex. B) at ¶¶ 114-15. Defendant then *agreed* that it was the "mission" of the Arbitration Tribunal to "rule on" Defendant's claim concerning jurisdiction. *Id.* at ¶ 149. Defendant thus *affirmatively* asked the Arbitration Tribunal to decide the question of its jurisdiction over Defendant. Finally, Defendant's commitment to Article 6(3) of the ICC Rules and to the Arbitration Tribunal's resolution of the question as to whether the Tribunal has jurisdiction over Defendant, are accompanied by no reservation or objection to the Arbitration Tribunal's jurisdiction to determine whether Defendant is bound by the Arbitration Agreement. *See* Dkt 4-6 (Partnership Agreement) at Art. 17; Dkt. 30-4 (Ex. B) at ¶¶ 4, 150. In short, while Defendant was already bound to the Arbitration Agreement for signing, negotiating, performing and benefiting from the Partnership Agreement, as found by the Arbitration Tribunal, its affirmative and unreserved request that the arbitrators decide whether it was bound by the Arbitration Agreement during the Arbitration itself, is a second, independent basis for concluding that Defendant delegated arbitrability questions to the arbitrators.

The Second Circuit Court of Appeals was recently confronted with a remarkably similar set of facts as those presented here, and found that adoption of the ICC Rules and adoption of Terms of Reference that commit jurisdictional questions to the arbitral tribunal are dispositive as to the questions of whether the courts or arbitrators decide arbitrability, and whether a court must review with deference the jurisdictional findings of the arbitration tribunal. In *Olin Holdings Ltd. v. State of Libya*, No. 22-825-cv, 2023 U.S. App. LEXIS 17620 (2d Cir. July 12, 2023), the

Second Circuit found that conduct by Libya during an ICC arbitration demonstrated that "it 'clearly and unmistakably' agreed to send questions of arbitrability to the Tribunal." *Olin Holdings*, 2023 U.S. App. LEXIS 17620 at *27. As here, the Terms of Reference in *Olin Holdings* repeated "the parties' agreement that the Tribunal would be governed by the Rules of Arbitration of the ICC" and set out "Libya's claim that the Tribunal lacked jurisdiction over the dispute…" *Id.* at *8. Based on Libya's conduct in the arbitration, the Court of Appeals concluded that:

> Libya did not adequately object to the Tribunal's competence to decide the issues of arbitrability raised in its submissions. Instead, it urged the Tribunal to adopt its interpretation of Article 9 and 'decline' jurisdiction over the dispute. *Id.* at 246.

*Id.* at *28. Defendant's conduct in the underlying Arbitration here is indistinguishable from that of Libya's in *Olin Holdings*. The Second Circuit in *Olin Holdings* went on to find that:

> Unlike the respondents in *First Options*, who participated in the arbitration only to object to the arbitrability of the dispute, Libya participated in the entire proceeding and, in fact, independently urged the Tribunal to decide issues of arbitrability.

*Id.* at *29. The same is true here.

Defendant's conduct during the Arbitration demonstrates that it consented to the Arbitration and understood that the question as to whether it was bound by the Arbitration Agreement would be determined by the Arbitration Tribunal. The law is clear that where "the parties clearly and unmistakably agreed to submit issues of arbitrability to the Tribunal, [Defendant] is not entitled to *de novo* judicial review of the Tribunal's jurisdictional conclusion." *Id.* at *29-30; *see also Schneider v. Kingdom of Thail.*, 688 F.3d 68, 73 (2d Cir. 2012) (Terms of Reference committing jurisdictional questions to arbitrators and incorporating arbitration rules

that empower arbitrators to determine their own jurisdiction demonstrates that parties' "clearly and unmistakably committed questions of arbitrability to the arbitrators").

These facts, which are *independently dispositive* of the question of whether Defendant consented to arbitrate arbitrability, and therefore, waived sovereign immunity, are *not present* in the Spain Appeal—thus further distinguishing these proceedings from the Spain Appeal.

## II.     Defendant Alleges No Injury Absent a Stay Other Than Litigation Burden

Moving to the issue of potential injury absent a stay, whether the burden is on Defendant to show that it "will be irreparably injured absent a stay" (*Nken*, 556 U.S. at 434) or whether its burden is only to show "hardship," Defendant has not satisfied that burden here.

Defendant argues that "a stay is … justified" "because it spares [Defendant] the hardship of 'attendant burdens of litigation'." Dkt. 28 at 17. But briefing on Global Voice's Motion for Judgment is now complete and pending before the Court. Defendant, therefore, faces no further litigation burden regarding that Motion.

Elsewhere in Defendant's Opposition, Defendant complains that responding to Global Voice's Motion for Judgment caused it "unnecessary expense," "unnecessary legal fees," and "waste[d]" its "resources." Dkt. 28 at 4, 19. That complaint is unreasonable: Global Voice is simply asserting its legal right to have the Final Award recognized and enforced in the U.S. In any event, Defendant complains about events that are now in the past (costs it may have incurred), not injury Defendant alleges *will* incur if the Court does not order a stay.

In short, Defendant has failed to identify any real injury or hardship it would sustain should the Court not order a stay.

## III.    A Stay Will Not Improve Judicial Economy

Defendant argues that a stay pending resolution of the Spain Appeal "will improve judicial economy," because the Spain Appeal "address[es] the very disputed point of law that gave rise to

[Defendant's] motion to dismiss for lack of subject matter jurisdiction…" Dkt. 28 at 12-13. Defendant also claims that a stay "will … mitigate against the possibility that the D.C. Circuit resolves the dispute differently from this Court." Dkt. 28 at 17. For all of the reasons set out *above*—and for all of the reasons set out in Global Voice's Motion for Judgment (Dkt. 25-2) and in Global Voice's Reply thereto (Dkt. 29)—that is not possible because the issues in the Spain Appeal are entirely different, and are, therefore irrelevant to this case.

## IV. A Stay Increases the Likelihood that Defendants' Assets in the Jurisdiction May be Dissipated

The third element of the traditional standard for a request for a stay requires consideration of "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434 (2009). The court found in *Vallejo* that "[i]n considering a stay pending resolution of independent proceedings, a court must weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Vallejo*, 2023 U.S. Dist. LEXIS 79406 at *1-2 (internal quotations omitted). Global Voice respectfully submits that any further delay in resolving its claims against Defendant, which are now enshrined in its Motion for Entry of Judgment (Dkt. 25), will substantially injure Global Voice in that such delay increases the likelihood that Defendant's increasingly limited assets within the U.S. will be insufficient to satisfy any award this Court may order.

On June 21, 2023, Global Voice filed a Status Report with the Court (Dkt. 24), informing the Court that on March 31, 2023, Judge Richard J. Leon of this Court issued a Memorandum Opinion granting a motion for entry of default judgment against Defendant in an unrelated enforcement proceeding concerning two arbitration awards and one French court judgment, *A.D. TRADE Belgium S.P.R.L. v. Republic of Guinea*, 1:22-cv-00245-RJL [1:22-cv-00245 Dkt. 20,

21].  Consistent with that Memorandum Opinion, Judge Leon awarded the plaintiff in that case $59,774,993.40 [1:22-cv-00245 Dkt. 23] plus post-judgment interest at the rate of 4.46%, plus costs [1:22-cv-00245 Dkts. 23, 24].

In that Status Report, Defendant explained that the *A.D. TRADE* decisions are relevant here because A.D. TRADE Belgium S.P.R.L and Global Voice are each seeking enforcement of significant amounts owing against Defendant's limited assets within the United States.  Dkt. 24 at 3.  Global Voice further informed the Court, in that Status Report, that Global Voice is concerned that now Defendant is on notice of both the A.D. TRADE Belgium S.P.R.L award, and the US$ 22,215,264.90 and EUR 93,532.51, plus interest, plus costs sought in these proceedings, Defendant may seek to dissipate its U.S. assets to Global Voice's detriment.  *Id.* at 3-4.

In short, there is more than a "fair possibility" that a stay pending the resolution of the Spain Appeal will harm Global Voice and "work damage" to its interests.  *Vallejo*, 2023 U.S. Dist. LEXIS 79406 at *2, 5 (internal quotations omitted).  In these circumstances, the burden is on Defendant to make out a "clear case of hardship or inequity in being required to go forward."  *Id.* (quoting *Landis*, 299 U.S. at 255).  Defendant has not done so, and thus, respectfully, Defendant's request for a stay should be denied.

**V.      The Cases Defendant Cites in Support of its Motion Are Inapposite**

In its Opposition, Defendant points to stays granted in three cases pending resolution of "jurisdictional issues."  Dkt. 28 at 17.  All three cases offer little to no assistance here because their underlying facts are entirely different from those in this case.  The first case, *Watkins Holdings S.À.R.L. et al. v. Kingdom of Spain*, No. 1:20-cv-01081 (D.D.C. June 9, 2023) has identical jurisdictional facts as the Spain Appeal: Spain is the defendant in an action to enforce a

foreign arbitral award, but is claiming lack of capacity by operation of EU law to have bound itself to the arbitration provision of the ECT. In that case, "both parties agree[d] that the appeals will be dispositive" on the merits, and the Court found that "judicial economy would be served" by a stay to avoid a "duplicative appeal." *Id.* For all of the reasons set forth *above*, that reasoning does not apply here.

Defendant cites *Boumediene v. Bush*, 450 F. Supp. 2d 25 (D.D.C. 2006), which concerned an extraordinary circumstance not involving a foreign sovereign. That decision relates to 17 *habeas corpus* cases brought by Guantanamo Bay detainees. The Court declined to exercise its jurisdiction for a number of reasons. First, while the action was pending, Congress passed a law depriving the District Court of jurisdiction to hear applications for writs of *habeas corpus* by Guantanamo Bay detainees. *Boumediene*, 450 F. Supp. 2d at 30. Second, at that time the constitutionality of the law was being challenged in appellate courts, and "the question of our Court's jurisdiction [was] still in limbo." *Id.* at 31. It was under these circumstances—which probably have no parallel in U.S. legal history, much less relevance to this action or to the Spain Appeal—that the court declined to act. *Boumediene* is thus inapposite here.

Finally, Defendant cites *Vallejo*, 2023 U.S. Dist. LEXIS 79406. *Vallejo* stands for the proposition that a court may issue a stay if a pending appellate court case "will almost assuredly answer a key question potentially dispositive in this case" (*id.* at *3), and render it "moot." (*id.* at *2). In *Vallejo*, the narrow question in a pending Court of Appeals case was identical to the question pending in the district court: "whether congressional rescission of unobligated funds from the Shuttered Venue Operators Grant (SVOG) Program prevents courts from providing relief." *Id.* at *3. In *Vallejo*, the identicality of issues justified issuing a stay. Here, by contrast, even Defendant does not claim that the issues in the Spain Appeal are identical.

In short, none of these cases assist Defendant here.

## VI. Defendant Failed to Reasonably Meet and Confer Before Moving to Stay

Also relevant to Defendant's seeking of discretionary relief here, Defendant failed to reasonably meet and confer with Global Voice before filing its motion for a stay. The Rules of the U.S. District Court for the District of Columbia ("Local Rule[s]") require Defendant when filing a non-dispositive motion, to "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." Local Rule 7(m).

On June 29, 2023 counsel for Defendant informed counsel for Global Voice via email that "if [Global Voice] will not consent to a stay," Defendant "may ask the Court to consider whether an award of attorney's fees under 28 U.S.C. 1927 is appropriate." Dkt. 30-2 (2d Supp. Decl. Draper) at ¶ 5, and Dkt. 30-5 (**Ex. C,** Defendant's Jun. 29, 2023 Email). Counsel for Global Voice responded on June 30, 2023, informing Defendant that Global Voice "opposes any motion for a stay of [Global Voice's] pending motions (D.I. 25)," and explaining why there was "no basis for a stay," and "no basis for any" claim for attorney's fees. Dkt. 30-2 at ¶ 6, and Dkt. 30-6 (**Ex. D**, Global Voice's Jun. 30, 2023 Letter). Counsel for Global Voice also wrote that Global Voice was willing "to discuss [Global Voice's] pending motions" and the June 29 and 30 exchange of correspondence. *Id*. Counsel for Defendant did not accept that invitation and instead filed its Opposition, a motion for a stay, and a motion for sanctions five days later on July 5, 2023. Dkts. 26-28.

Defendant thus failed to reasonably meet and confer with Global Voice. Instead, Defendant simply threatened sanctions if Global Voice did not agree to jointly request a stay. Defendant's actions were unreasonable,.

**VII.    Defendant Threatened Global Voices' Counsel Personally With Sanctions If Global Voice Did Not Agree to a Stay**

Finally, Global Voice is compelled to point out that Defendant is incorrect when it states that it asked Global Voice to withdraw its Global Voice's Motion for Judgment. Dkt. 28 at 4, 5. At no time, including in Defendant's June 29, 2023 Email, did Defendant request that Global Voice *withdraw* its Motion. *See* Dkt. 30-21 at ¶ 5, and Dkt. 30-5 (**Ex. C**). Rather, Defendant's counsel simply demanded that Global Voice "agree to a stay," adding that if counsel for Global Voice did not "voluntarily" do so, "counsel for [Defendant] indicated their intention to seek relief pursuant to 28 U.S.C. § 1927." Dkt. 28 at 4, 5.

It is inappropriate and noteworthy that Defendant sought to browbeat Plaintiff's counsel with the threat of sanctions against counsel personally, in an attempt to gain Plaintiff's agreement to further delay these proceedings; and that Defendant then misrepresented those efforts to the Court. Defendant's actions show that Defendant is focused on delaying enforcement of the Final Award, not on the legitimate resolution of these proceedings.

## CONCLUSION

For all of the reasons set forth herein, Global Voice respectfully requests that the Court deny Defendant's motion to stay proceedings.

Dated:  July 19, 2023
         New York, N.Y.

                                        Respectfully submitted,

                                        By: */s/ Matthew E. Draper*
                                        Matthew E. Draper (DC Bar No. 1045930)
                                        DRAPER & DRAPER LLC
                                        100 Park Avenue, Suite 1600
                                        New York, NY 10017
                                        T: +1 347-442-7788
                                        Matthew.Draper@draperllc.com

                                        *Attorneys for Plaintiff Global Voice Group
                                        SA*