UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLOBAL VOICE GROUP SA, *Plaintiff*, v. THE REPUBLIC OF GUINEA, *Defendant*. | Civil Action No. 1:22-cv-02100-JMC |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO SET ASIDE ENTRY OF DEFAULT AND MOTION TO DISMISS**

Matthew E. Draper
Corinne E. Atton
DRAPER & DRAPER LLC
100 Park Avenue, Suite 1600
New York, NY 10017
T: +1 347-442-7788
Matthew.Draper@draperllc.com

*Attorneys for Plaintiff
Global Voice Group SA*

In Defendant's Reply Memorandum in Support of its Motion to Set Aside Entry of Default and Motion to Dismiss ("Defs.' Reply" and "Reply") (Dkt. 17), Defendant ("Guinea") makes a new factual claim, and based on that new factual claim makes new arguments. Having moved for leave to file a Sur-Reply in the motion filed herewith, Plaintiff Global Voice Group SA ("Global Voice") hereby responds to that new factual claim and to those new arguments.

I.  **Guinea Misrepresents the Facts and Reasoning of the Arbitral Tribunal's Unanimous Finding that Guinea is Bound by the Arbitration Agreement**

In its Reply Guinea shies away from the fact that it **signed** the Partnership Agreement containing the Arbitration Agreement, and thus agreed to be bound by those agreements. Guinea then misstates the record. Guinea states in its Reply that:

> ***The arbitral tribunal acknowledged that*** "the content of the Partnership Agreement, like that of the Amendment or the Addendum, makes no mention of [Guinea], nor does it impose any obligation on [Guinea][.]" Dkt. 4-1 at para. 127.

Defs. Reply at 7 (emphasis added). This statement is false, both as a description of the Arbitral Tribunal's findings, and as to Guinea's status vis-à-vis the Partnership Agreement.

As an initial matter, Guinea is not quoting the findings of the Arbitral Tribunal here but rather Guinea's *own* argument to the Tribunal. *Compare* Defs. Reply at 7 with the Arbitration Final Award (Dkt. 4-1) at ¶¶ 125-127. The Tribunal noted Guinea's concession that it had "signed the Partnership Agreement," and rejected Guinea's "argument that the Agreement *'does not impose any obligation on Guinea'*." *Id.* at ¶¶ 147, 149.

Considering the evidentiary record as a whole, the Arbitral Tribunal found that it had jurisdiction over Guinea as a party to the Partnership Agreement and the Arbitration Agreement for a number of reasons, including that:

(i)  Guinea "active[ly] participat[ed] … throughout the contractual process, from its conclusion to its termination, including its execution" (*id.* at ¶ 147);

2

(ii) Guinea "assumed" "responsibilities" that "were essential to the implementation and proper functioning of the Agreement" (*id.* at ¶ 149);

(iii) There was a "close interweaving of [Guinea] and the PTRA as beneficiaries … under the Partnership Agreement" (*id.* at ¶ 146);

(iv) "[T]he Agreement was a necessary instrument for the implementation of a new fiscal policy in Guinea and enabled the Guinean State to collect some USD 212 million in tax revenue" (*id.* at ¶ 146); and that

(v) "[Guinea] considered itself not only bound by its terms and by the Arbitration Agreement it contains, but that it also knew that it was the beneficiary of the tools and services provided under the Agreement" (*id.* at ¶ 152).

In short, the Arbitral Tribunal conclusively and specifically rejected **all** of Guinea's contentions regarding jurisdiction, including the contentions quoted by Guinea in its Reply.

The suggestion that the Partnership Agreement does not "mention" Guinea is also simply false. On the contrary, **Guinea is a signatory to the Partnership Agreement** (and the Arbitration Agreement within it):

> Pour le Ministère des Télécommunications
> Et des Nouvelles Technologies de l'Information
> A l'attention du Colonel Mathurin BANGOURA
> Ministre
> BP 3000 Conakry
> Tél : +224 30454586

Partnership Agreement (Dkt. 4-5) at Page 22 of 24 (English translation at Dkt. 4-6 at Page 11 of 24). Guinea conceded this in its opening brief: "the Partnership Agreement [which contains the

3

Arbitration Agreement] was signed by the Guinean Minister of Telecommunications and New Information Technologies, Colonel Mathurin Bangoura." Dkt. 16-1 at 2.

Indeed, the Partnership Agreement is replete with references to Guinea, starting in the preamble:

> Considering the need of [Guinea] to provide the institution regulating the telecommunications sector with adequate tools to enable it to play its role as a State regulator of the telecommunications sector;
>
> Given the need of [Guinea] to control the flow of local and international telephone traffic in order to adopt the taxation regime most appropriate to the fiscal and socio-economic needs and realities of the Republic of Guinea;
> …
> Whereas [Global Voice] can provide the State of Guinea with the tools and technological means required by its policy to better manage the traffic volumes of landline and mobile operators in Guinea;

Dkt. 4-6 at Page 3 of 24. Similarly, for example, Article 1 (Purpose) mentions "Guinea" no less than 10 times (*id.* at Page 5 of 24), and Article 3 (Obligations of the Parties) mentions "Guinea" multiple times, including in the statement:

> 3.2 [Global Voice] undertakes to … Provide and install control tools for the State of Guinea

*Id.* at Page 5 of 24.

Guinea's argument here that the Court lacks subject matter jurisdiction hangs on the Court adopting Guinea's misrepresentation in its Reply, and ignoring the established facts in the record.

## II.    Guinea Posits an Erroneous New Legal Standard

Having made this misrepresentation, Guinea then posits an erroneous new legal standard: that Plaintiff Global Voice has "failed to establish a *prima facie* case for the existence of an arbitration agreement to which Guinea was a party" because "the Partnership Agreement defines only the PTRA and Plaintiff—***not Guinea***—as 'Parties' of the agreement." *See* Defs. Reply at

4

11 (citing Dkt. 4-6 (the Partnership Agreement) at 2 (emphasis in original)).  In short, Guinea argues that as a matter of law the Court cannot exercise subject matter jurisdiction over a sovereign state *unless* that state is expressly identified in a *definitions section* of an underlying contract as a "party"—irrespective of whether the state is a party based on any number of other factors including, for example, the facts that the state "active[ly] participat[ed] … throughout the contractual process, from its conclusion to its termination, including its execution"; the state signed the contract; and the state "considered itself … bound by its terms and by the Arbitration Agreement it contains," all of which the Arbitral Tribunal found to be true here.  Arbitration Final Award (Dkt. 4-1) at ¶¶ 146-149, 152-153.

### III. Guinea Relies on Inapposite Case Law from Other Circuits in an Attempt to Evade This Court's Subject Matter Jurisdiction

In further support of its erroneous argument, Guinea then identifies four new cases from other circuits.  Each of these cases when considered in light of the established evidentiary record, are either inapposite, or support the finding that this Court has subject matter jurisdiction.

First, Guinea quotes at length a Second Circuit case, *Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42 (2d Cir. 2021) to suggest that Global Voice did not meet its *prima facie* burden to show that Guinea is a party to the Partnership Agreement and the Arbitration Agreement.  Defs. Reply at 10-11.  In *Gater Assets*, an award creditor sought to enforce a foreign arbitration award against the award debtor and the Republic of Moldova.  The Second Circuit Court of Appeals refused to enforce the award against Moldova, and Guinea urges the same outcome here.  But *Gater Assets* presents a starkly different set of facts, including that (i) it was "undisputed that [Moldova] never signed th[e] contract", (ii) Moldova was not sued in the arbitration, and (iii) Moldova was not found by the arbitrators to be a party to the arbitration or to the underlying contract.  *Gater Assets*, 2 F.4th at 67.  Here, by contrast, Guinea (a) signed the Partnership Agreement, (b) was

sued in arbitration, and (c) the Tribunal found that Guinea "was a party to the Partnership Agreement … considered itself … bound by its terms and by the Arbitration Agreement it contains … knew that it was the beneficiary … under the Agreement," and has rights and obligations under the agreement.  Arbitration Final Award (Dkt. 4-1) at ¶¶ 152-153.

Guinea also cites *In re Paragon Offshore PLC*, 588 B.R. 735, 753 & n. 90 (D. Del. 2018) and *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350 (Fed. Cir. 2004).  Neither of these cases apply here because they too concern significantly different facts.  *Paragon Offshore* concerned a motion to compel arbitration by defendant directors who (i) were "not signatories to" the underlying contract, and (ii) were "*expressly excluded* from the Arbitration Provision." *Paragon Offshore*, 588 B.R. at 741.  *Microchip Tech* is also not on point because the "threshold question" there was "whether [Microchip], *which did not itself sign the . . . agreement on which [Philips'] claim to arbitration depends*, is bound at all by the agreement's arbitration provision." *Microchip Tech.*, 367 F.3d at 1358 (emphasis added).  Here (a) Guinea signed the Partnership Agreement, (b) Guinea was not expressly excluded from the Arbitration Agreement within the Partnership Agreement, and (c) the Arbitral Tribunal found that Guinea was "bound by" the terms of the Partnership Agreement "and by the Arbitration Agreement it contains."  Arbitration Final Award (Dkt. 4-1) at ¶ 152.

**IV.    Guinea Misstates the Second Circuit's Holding in *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205 (2d Cir. 2005)**

Finally, Guinea seriously misrepresents the holding in *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205 (2d Cir. 2005).  Defs. Reply at 4, 12, 13, 14.  Guinea alleges that in *Contec*, the Second Circuit "recognized that a defendant who is not a party to an arbitration agreement cannot be presumed to have consented to allow an arbitrator to determine if that defendant is a

sued in arbitration, and (c) the Tribunal found that Guinea "was a party to the Partnership Agreement … considered itself … bound by its terms and by the Arbitration Agreement it contains … knew that it was the beneficiary … under the Agreement," and has rights and obligations under the agreement.  Arbitration Final Award (Dkt. 4-1) at ¶¶ 152-153.

Guinea also cites *In re Paragon Offshore PLC*, 588 B.R. 735, 753 & n. 90 (D. Del. 2018) and *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350 (Fed. Cir. 2004).  Neither of these cases apply here because they too concern significantly different facts.  *Paragon Offshore* concerned a motion to compel arbitration by defendant directors who (i) were "not signatories to" the underlying contract, and (ii) were "*expressly excluded* from the Arbitration Provision." *Paragon Offshore*, 588 B.R. at 741.  *Microchip Tech* is also not on point because the "threshold question" there was "whether [Microchip], *which did not itself sign the . . . agreement on which [Philips'] claim to arbitration depends*, is bound at all by the agreement's arbitration provision." *Microchip Tech.*, 367 F.3d at 1358 (emphasis added).  Here (a) Guinea signed the Partnership Agreement, (b) Guinea was not expressly excluded from the Arbitration Agreement within the Partnership Agreement, and (c) the Arbitral Tribunal found that Guinea was "bound by" the terms of the Partnership Agreement "and by the Arbitration Agreement it contains."  Arbitration Final Award (Dkt. 4-1) at ¶ 152.

**IV.    Guinea Misstates the Second Circuit's Holding in *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205 (2d Cir. 2005)**

Finally, Guinea seriously misrepresents the holding in *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205 (2d Cir. 2005).  Defs. Reply at 4, 12, 13, 14.  Guinea alleges that in *Contec*, the Second Circuit "recognized that a defendant who is not a party to an arbitration agreement cannot be presumed to have consented to allow an arbitrator to determine if that defendant is a

party to the arbitration agreement." Defs. Reply at 13.  Guinea offers no cite for this assertion, and that is not the holding in *Contec*.  On the contrary, the Second Circuit found that:

> as a **signatory** to a contract containing an arbitration clause and **incorporating by reference the AAA Rules**, Remote Solution cannot now disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability.

*Contec*, 398 F.3d at 211 (italics in original; bold emphasis added).  Similarly, here, by its own admission, Guinea signed the Partnership Agreement containing the Arbitration Agreement; the Arbitral Tribunal found in a well-reasoned and comprehensive decision that Guinea was a party to those agreements and the Tribunal found that it had jurisdiction over Guinea; and for the reasons set out in Global Voice's Memorandum of Points and Authorities in Opposition to Guinea's Motion (Dkt. 17) by incorporating by reference the ICC Rules of Arbitration, including Article 6(3) therein, Guinea cannot now disown its clear and unmistakable delegation of jurisdiction determination to the Arbitral Tribunal.  *See* Dkt. 17 at II.C. (pp. 20-23).

      Guinea also fails to acknowledge that the Second Circuit in *Contec* comprehensively rejected the decision in *Microchip Tech.* (*supra*) for failing to consider—as *First Options v. Kaplan* 514 U.S. 938, 946 (1995) requires—whether the parties delegated arbitrability determinations to the arbitrators.  The court in *Contec* concluded that "incorporation of arbitration rules giving jurisdiction to the arbitrator provides clear and unmistakable evidence of the parties' intent to arbitrate issues of arbitrability."  *Contec*, 398 F.3d at 210.  The Second Circuit then went on to criticize *Microchip* for failing to consider the implication of the parties' incorporation of institutional arbitration rules, as the First Circuit did in *Apollo Comput. v. Berg*, 886 F.2d 469 (1st Cir. 1989):

> In this case, as in *Apollo*, the party seeking to avoid arbitration was a signatory to the arbitration agreement. Although the *Microchip* court found this distinction irrelevant, *id*. at 1358, we find it an

7

> important indicator of Remote Solution's expectation and intent when binding itself to the [contract containing the arbitration agreement].

*Contec*, 398 F.3d at 211. The *Contec* court's analysis is persuasive, and reflects the law of this Circuit.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in its Opposition (Dkt. 17), Global Voice respectfully requests that the Court deny (1) Guinea's Motion to Set Aside Entry of Default, (2) Guinea's Motions to Dismiss the Complaint, and (3) Guinea's alternative request for an order that Global Voice re-serve its Complaint, in their entirety.

Dated: February 8, 2023
      New York, N.Y.

Respectfully submitted,

By: */s/ Matthew E. Draper*

Matthew E. Draper (DC Bar No. 1045930)
DRAPER & DRAPER LLC
100 Park Avenue, Suite 1600
New York, NY 10017
T: +1 347-442-7788
Matthew.Draper@draperllc.com

*Attorneys for Plaintiff Global Voice Group SA*